1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

12

SOUTHERN DISTRICT OF CALIFORNIA

13

14

JANE DOROTIK,

15

Plaintiff,

16

v.

17

COUNTY OF SAN DIEGO, et al,

18

Defendants.

Case No.:  23-CV-1045-CAB-DDL

**ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS**

**[Doc. No. 14]**

19

20        In 2001, a state court jury found Plaintiff Jane Dorotik guilty of murdering her

21    husband, and she was sentenced to 25 years to life in prison.  On July 24, 2020, the state

22    court vacated Plaintiff's conviction after new DNA testing discovered DNA from someone

23    other than Plaintiff.  In October 2020, the state decided to re-prosecute Plaintiff, but it

24    subsequently moved to drop the charges, which the state court granted on May 16, 2022.

25    After filing a claim with the County in November 2022 which was rejected, Plaintiff filed

26    this lawsuit on June 5, 2023.

27        The complaint asserts claims for violations of Plaintiff's constitutional rights under

28    42 U.S.C. § 1983, along with equivalent claims under California law, against the County

1

of San Diego and various County employees in connection with the murder investigation that led to her conviction. Defendants have moved to dismiss the complaint as barred by the statute of limitations and for failure to state a claim. The motion has been fully briefed, and the Court held a hearing on January 10, 2024. For the reasons stated at the hearing and as set forth below, the motion is hereby **GRANTED-IN-PART and DENIED-IN-PART.**

## I.       Allegations in the Complaint

On February 13, 2000, Plaintiff reported her husband, Decedent Robert Dorotik, missing when he did not return home after an afternoon jog. [Doc. No. 1 at ¶ 29]. His body was found dead the next day, lying in a wooded area several miles from their home. [Doc. No. 1 at ¶¶ 2, 29]. The San Diego Sheriff's Department (the "Sheriff's Department"), led by Detective Richard Empson, was tasked with investigating the murder.

Empson allegedly pursued the theory that the Decedent never went on a jog, and that Plaintiff murdered him in their home using a household hammer or hatchet. [Doc. No. 1 at ¶¶ 31, 32]. The Sheriff's Department allegedly "fabricated, mishandled, or withheld" evidence to pursue this theory. [Doc. No. 1 at ¶ 32]. Plaintiff alleges that Empson, along with fellow Sheriff's Department detectives Defendants James Blackmon, Janet Ryzdynski, and Bill Donohue, ignored exculpatory forensic reports, omitted or altered eyewitness testimony from their written reports, and failed to disclose evidence to the district attorney's office and defense counsel. She additionally alleges that Defendants Charles Merritt and Connie Milton, who worked for the San Diego Sheriff Department Regional Crime Lab (the "Crime Lab"), mishandled evidence and failed to conduct adequate blood tests. Plaintiff also asserts that Defendant Ron Barry is liable for the actions of Defendants Merritt and Milton as their supervisor. Finally, Plaintiff claims that the County of San Diego is responsible for the unlawful actions of the Sheriff's Department, the Crime Lab, and the district attorney's office for its failure to conduct training or properly prescribe rules, regulations, and practices to prevent Plaintiff's wrongful conviction.

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted"—generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a recognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim shoring that the pleader is entitled to relief."   Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand . . . more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570); see also Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the collective facts pled "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Facts "merely consistent with a defendant's liability" fall short of a plausible entitlement to relief.  *Id.* (quoting *Twombly*, 550 U.S. at 557).  The Court need not accept as true "legal conclusions" contained in the complaint, *id.*, or other "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## III.    Plaintiff's § 1983 Claims Are Not Time-Barred

There is no dispute that California's two-year statute of imitations for personal injury actions applies to Plaintiff's § 1983 claims.  *See* Cal. Code Civ. Proc. § 335.1.  The only dispute concerns when the limitations period began to run.

"Although California law determines the *length* of the limitations period, federal law determines when a civil rights claim *accrues*."  *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (emphasis in original).  "[U]nder federal law, a claim

1  accrues when the plaintiff knows or has reason to know of the injury which is the basis of

2  the action." *Id.* (citation and internal quotations omitted).

3       Here, Defendants argue that, under *Heck v. Humphrey*, 512 U.S. 477 (1994),

4  Plaintiff's claims accrued on July 24, 2020, when the state court vacated her conviction,

5  and are brought more than two years past the statute of limitations.  On the other hand,

6  Plaintiff argues that her claims are timely because she brought them less than two years

7  after the murder charge was finally dismissed on May 16, 2022.

8       Under *Heck*, when a current or former state prisoner alleges a § 1983 cause of action

9  similar to the common law torts of malicious prosecution and fabrication of evidence, the

10  claim does not accrue until after the state conviction is formally vacated.  *See Heck*, 512

11  U.S. at 489.  A state court conviction is vacated under *Heck* if it is "reversed, expunged,

12  invalidated, or impugned by the grant of a writ of habeas corpus."  *Id.*  However, where

13  the conviction has been vacated, but the state prisoner remains "subject to the very same

14  charges based on the same evidence" in a subsequent trial, the claim does not accrue until

15  plaintiff is acquitted of all charges.  *Bradford v. Scherschligt*, 803 F.3d 382, 388 (9th Cir.

16  2015); *see also McDonough v. Smith*, 139 S. Ct. 2149, 2154-55 (2019) (holding the statute

17  of limitations for a malicious prosecution claim "does not begin to run until the criminal

18  proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in [her]

19  favor.").

20       For example, in *Bradford*, the plaintiff petitioned the state court to get his conviction

21  vacated.  *Bradford*, 803 F.3d at 385.  The Court of Appeals granted the petition and

22  permitted the prosecution to pursue a new trial.  *Id.*  At the close of the new trial, a jury

23  acquitted the plaintiff of all charges.  *Id.*  The plaintiff subsequently filed a § 1983 claim

24  against the detective involved in the investigation the led to his original conviction.  *Id.*

25  Considering these facts, the Ninth Circuit found the date of accrual for plaintiff's § 1983

26  claim was the date upon which the jury acquitted him of all charges, not the date upon

27  which his conviction was vacated.  *Id.* at 389.

28

1   Since *Bradford*, district courts have found that where the prosecution dismisses the

2   charges against the state prisoner in lieu of pursuing a new trial, the §1983 claim does not

3   accrue until the case is dismissed.  *See Raugust v. Montana*, No. CV 20-9-H-CCL, 2020

4   WL 3832971, at *5 (D. Mont. July 8, 2020) ("Raugust remained subject to the very same

5   charges based on the same evidence until the State dismissed the pending charges against

6   him."); *see also Edmonds v. City of Los Angeles*, No. 221CV03149FWSADS, 2023 WL

7   7927797, at *13 (C.D. Cal. June 30, 2023) (finding plaintiff's fabrication of evidence claim

8   did not accrue until all charges were dismissed).

9   Here, as in *Bradford*, the state pursued a new trial after Plaintiff's original conviction

10  was vacated.  Thus, the statute of limitations on Plaintiff's § 1983 claims did not begin to

11  run when her original conviction was vacated.  Defendants' argument that the Court should

12  use the date of vacatur because the state could re-charge Plaintiff at any time and the charge

13  against her is not yet "terminated" is unpersuasive.  Ultimately, Plaintiff remained subject

14  to the exact same charge based on the same evidence used at the 2001 trial until the

15  prosecution abandoned its pursuit and dismissed the charge. The Court finds that the two-

16  year statute of limitations on Plaintiff's § 1983 claims began to run on May 16, 2022, when

17  the charge against Plaintiff was dismissed.  Accordingly, because Plaintiff filed this lawsuit

18  within two years of May 16, 2022, her § 1983 claims are not time-barred.

19  **IV.   Section 1983 Claims**

20  The complaint asserts one § 1983 claim against each individual Defendant for

21  deprivation of civil rights, and an additional supervisory liability claim against Defendant

22  Ron Barry.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

23  secured by the Constitution and laws of the United States, and must show that the alleged

24  deprivation was committed by a person acting under the color of state law." *West v. Atkins*,

25  487 U.S. 42, 48 (1988).

26  **A. Individual Defendants**

27  Defendants first argue that Plaintiff has failed to establish a § 1983 claim against

28  each individual Defendant pursuant to Federal Rule of Civil Procedure 8 because "Plaintiff

23-CV-1045-CAB-DDL

1  never specifies which of the right secured by each Constitutional Amendment were

2  allegedly infringed upon." [Doc. No. 14 at 9]. The Court disagrees. The complaint

3  adequately alleges facts that, if proven, demonstrate how the actions of the individual

4  Defendants deprived her of her Due Process rights under the Fifth and Fourteenth

5  Amendments.[1]

6         With respect to most of the individual Defendants, the complaint alleges specific

7  actions that contributed to the allegedly wrongful conviction and violation of Plaintiff's

8  rights. These allegations include that:

9
10  - Empson altered the crime scene by removing a rope found in the Plaintiff's home and also allegedly refused to disclose exculpatory evidence
11  regarding the murder weapon. [Doc. No. 1 at ¶ 32c].

12  - Blackmon created a report that contradicted an eyewitness who testified
13  differently at trial and to the local news. [Doc. No. 1 at ¶ 32j].

14  - Ryzdynski assisted Blackmon in creating the contradictory report and told
15  that same witness that her testimony was irrelevant prior to trial. [Doc.
16  No. 1 at ¶ 32j].

17  - Donohue omitted information from a witness in his police report and did
18  not provide the interview recording to defense counsel before trial. [Doc.
19  No. 1 at ¶ 32l].

20  - Merritt did not follow proper procedures in conducting his analysis of the
21  blood found at the scene. [Doc. No. 1 at ¶¶ 46-48].

22  These allegations are sufficient to state a claim for violation of Plaintiff's constitutional

23  rights against these five Defendants.

24

25

26  [1] Although Plaintiff alleges that her § 1983 claims are additionally brought under the Fourth and Eighth
27  Amendments, Plaintiff acknowledges that "the constitutional source of the violations and obligations asserted [in the complaint] is primarily the due process clause of the Fifth and Fourteenth Amendments."
28  [Doc. No. 1 at 35]. The Court finds that Plaintiff has not established § 1983 claims under the Fourth and Eighth Amendments.

23-CV-1045-CAB-DDL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In contrast with these specific allegations, the complaint lacks specific allegations of wrongdoing by Milton and Barry.  As for Milton, the complaint merely details steps Milton took while conducting her analysis of the blood work, including consulting with district attorney's office about laboratory requests and the results of those tests.  There is no indication that Milton intentionally fabricated, mishandled, or withheld evidence throughout the course of Plaintiff's state court investigation.  The only other information provided about Milton is that she was placed on a *Brady* index in 2021, which does not sufficiently prove any wrongdoing in Plaintiff's case.  The complaint contains even less information on Barry's involvement in Plaintiff's case outside of his status as the head of the Crime Lab at the time of Plaintiff's trial.  Thus, the Court cannot find any allegations to hold Defendants Milton and Barry individually liable under § 1983 for depriving Plaintiff of any constitutional right.

### B. Supervisory Liability Against Barry

To be liable as a supervisor under § 1983, (1) a defendant must have been personally involved in the constitutional deprivation, or (2) there must be a sufficient causal connection between the defendant supervisor's wrongful conduct and the constitutional violation.  *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  Thus, to state a claim based on supervisory liability, a complaint must allege that "the supervisor breached a duty to plaintiff which was the proximate cause of the injury."  *Id.* (internal citation omitted).

As reasoned above, the complaint lacks any allegations that Barry participated in the deprivation of Plaintiff's rights in his oversight of the Crime Lab employee Defendants.  Indeed, the complaint fails to allege any involvement by Barry in Plaintiff's state court case.  Accordingly, the complaint fails to state a supervisory liability claim against Barry.

### V.    *Monell* Claim against the County of San Diego

A government entity cannot be held vicariously liable for the acts of its employees under § 1983 unless a plaintiff can show that the entity's policy, practice, or custom caused the constitutional violation.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  A "custom or policy of inaction, however, must be the result of a conscious

1   or deliberate choice to follow a course of action . . . made from among various alternatives

2   by the official or officials responsible for establishing final policy with respect to the

3   subject matter in question." *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001)

4   (internal citations and quotations omitted).  When alleging a failure to train as a *Monell*

5   violation, "a plaintiff must show that his or her constitutional injury would have been

6   avoided had the government entity properly trained its employees." *Id.* (internal quotations

7   omitted).  "[M]ere negligence in training or supervision . . . does not give rise to a *Monell*

8   claim." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

9        The complaint asserts that the County is responsible for the actions of the Sheriff's

10   Department, the Crime Lab, and the district attorney's office due to its alleged "failure to

11   stop or correct widespread patterns of unconstitutional conduct." [Doc. No. 1 at ¶ 94].  The

12   complaint lacks, however, any allegations of a County custom or policy that the individual

13   Defendants were following when they took the actions that Plaintiff claims violated her

14   constitutional rights.  The complaint's allegations about unrelated cases of Crime Lab

15   employees mishandling blood tests does not demonstrate that the County's failure to train

16   caused the employees' alleged deficiencies in either those cases or with respect to

17   Plaintiff's criminal case.  Accordingly, the complaint also does not state a *Monell* claim

18   against the County.

19   **VI.    California Tort Claims Act**

20        As with the § 1983 statute of limitations, there is no dispute that Plaintiff had a six-

21   month period to file a tort claim with the County.  The dispute here is when the claim

22   accrued. "The California Tort Claims Act requires, as condition precedent to suit against a

23   public entity, the timely presentation of a written claim and the rejection of the claim in

24   whole or in part." *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th

25   Cir. 1995).  An individual has "six months after the accrual of the cause of action" to file

26   this written claim.  Cal. Gov't Code § 911.2.  Although the filing of a state civil action

27   against "a peace officer or the public entity employing a peace officer based upon conduct

28   of a peace officer relating to the offense for which the accused is charged" can be tolled

1   until the charges are dropped, state law still requires a claim to be presented to the county

2   within six months of accrual. Cal. Gov't Code § 945.3.

3          Here, Plaintiff did not file a claim with the County until November 15, 2022, less

4   than six months after the State dismissed the charge against her.   Defendants argue

5   Plaintiff's claim with the County should have been filed no later than six months after her

6   habeas petition was filed in August 2019, the last date of which she would have been aware

7   of her claims against the Defendants.  The strict language of § 945.3 does not allow the

8   Court to "extend the time within which a claim is required to be presented pursuant to

9   Section 911.2."  Cal. Gov't Code § 945.3; *See also Wilkins v. State of California*, No.

10  820CV03417JLSDFM, 2021 WL 9315231, at *4 (C.D. Cal. Nov. 4, 2021) (holding that §

11  945.3 "does not toll the time period relevant to the filing of government claims.").  Plaintiff

12  knew, or should have known, of her claims against the Defendants by the time she filed

13  her habeas petition in August 2019, and she failed to file a claim with the County within

14  six months of that date. Accordingly, the Court finds Plaintiff failed to comply with the

15  requirements of the California Tort Claims Act.

16  **VII.   Doe Defendants**

17         Defendants argue that the Doe Defendants should be dismissed for failure to allege

18  with particularity any actions of those Defendants.  It is questionable as to whether the

19  named Defendants have standing to make this argument.  Moreover, this argument is both

20  premature and unnecessary because Plaintiff would eventually have to amend her

21  complaint to identify and assert any claims against the Doe Defendants.  If Plaintiff does

22  not timely obtain leave to amend to assert claims against Doe Defendants, then such claims

23  will necessarily be dismissed.

24  **VIII.  Conclusion**

25         In light of the foregoing, the Court hereby **ORDERS** the following:

26  1.  The motion to dismiss the § 1983 claims as time-barred is **DENIED.**

27  2.  The motion to dismiss Claim 1 against Empson, Blackmon, Ryzdynski, Donohue,

28      and Merritt is **DENIED.**

3. The motion to dismiss Claim 1 against Milton and Barry is **GRANTED,** and Claim 1 against Milton and Barry is **DISMISSED WITHOUT PREJUDICE** to Plaintiff asserting claims against each Defendant with specificity**.**

4. The motion to dismiss as to the *Monell* claim against the County of San Diego is **GRANTED,** and Claim 2 is **DISMISSED WITHOUT PREJUDICE** to Plaintiff asserting a *Monell* claim that adequately alleges a policy or practice, on notice to the County of San Diego, that deprived Plaintiff and others of their rights.

5. The motion to dismiss the supervisory liability claim against Barry is **GRANTED,** and Claim 3 is **DISMISSED WITHOUT PREJUDICE** to Plaintiff asserting a supervisory liability claim that connects Barry to Plaintiff's case.

6. The motion to dismiss as to Plaintiff's failure to comply with the California Tort Claims Act is **GRANTED,** and Plaintiff's state law claims are **DISMISSED WITH PREJUDICE** as time barred.

7. The motion to dismiss as to the Doe Defendants is **DENIED.**

8. On or before **January 30, 2024**, Plaintiff may file an amended complaint re-asserting the § 1983 claims against Milton and Barry and a *Monell* claim against the County.

It is **so ORDERED.**

Dated:  January 16, 2024

_____

Hon. Cathy Ann Bencivengo
United States District Judge