UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOROTIK, | Case No.:  23-cv-1045-CAB-DDL |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO DISMISS FAC AND MOTION TO STRIKE** |
| COUNTY OF SAN DIEGO, et al, | |
| Defendants. | **[Doc. No. 27]** |

On January 24, 2024, Plaintiff filed a First Amended Complaint ("FAC").  [Doc. No. 25].  On February 12, 2024, Defendants filed a motion to dismiss the FAC and a motion to strike portions of the complaint.  [Doc. No. 27].  The motion has been fully briefed, and the Court finds it suitable for determination on the papers.  For the reasons set forth, the motion to dismiss and motion to strike are both **DENIED.**

## I.    PROCEDURAL HISTORY

On June 5, 2023, Plaintiff Jane Dorotik filed a complaint against Defendant County of San Diego ("County") and numerous individual County Defendant employees. Plaintiff's causes of action arise out of the 2000-2001 state court investigation and subsequent conviction of Plaintiff for the murder of her husband, Decedent Robert Dorotik.  On September 19, 2023, Defendants County of San Diego, Richard Empson, James Blackmon, Janet Ryzdynski, Bill Donohue, Charles Merritt, Connie Milton, and Ron Barry (the "County Defendants") filed a motion to dismiss all claims in Plaintiff's case.  [Doc. No. 14].  On January 16, 2024, this Court issued an order dismissing with prejudice Plaintiff's state law claims as time barred for failure to comply with the California Tort Claims Act.  [Doc. No. 24].  The Court denied the motion to dismiss as to

Plaintiff's individual claims arising out of 42 U.S.C. § 1983 against Defendants Richard Empson, James Blackmon, Janet Ryzdynski, Bill Donohue, and Charles Merritt. *Id.* The Court granted the motion to dismiss with leave to amend as to (1) the § 1983 liability claims against Defendants Connie Milton and Ron Barry and (2) the *Monell* claim against Defendant County of San Diego. *Id.*

## II.    ALLEGATIONS IN THE FAC

On February 13, 2000, Plaintiff reported her husband, Decedent Robert Dorotik, missing when he did not return home after an afternoon jog. [FAC at ¶ 2.]   His body was found dead the next day, lying in a wooded area several miles from their home. *Id.* The San Diego Sheriff's Department (the "Sheriff's Department"), led by Detective Richard Empson, was tasked with investigating the murder.   After a year-long investigation, Plaintiff was tried by a jury and convicted for the murder of Decedent. [FAC at ¶ 59].  On July 24, 2020, Plaintiff's conviction was vacated. [FAC at ¶ 63].   On May 16, 2022, after a re-prosecution of Plaintiff, the San Diego District Attorney's Office dismissed the murder charge against Plaintiff. [FAC at ¶ 64].

The FAC alleges that, at the time of the 2000-2001 investigation, Defendant Empson allegedly pursued the theory that Decedent never went on a jog, and that Plaintiff murdered him in their home using a household hammer or hatchet.  Employees of the Sheriff's Department allegedly "fabricated, mishandled, or withheld" evidence to pursue this theory.  Plaintiff alleges that Empson, along with fellow Sheriff's Department detectives Defendants James Blackmon, Janet Ryzdynski and Bill Donohoue, ignored exculpatory forensic reports, omitted or altered eyewitness testimony from their written reports, and failed to disclose evidence to the district attorney's office and defense counsel.

### A. *San Diego Sheriff's Department Regional Crime Lab*

Plaintiff alleges additional facts in the FAC about the San Diego Sheriff's Department Regional Crime Lab ("Crime Lab").  As stated in the original complaint, Plaintiff alleges that Crime Lab employees, Defendants Charles Merritt and Connie

Milton, under the supervision of Crime Lab director Defendant Ron Barry, mishandled evidence and failed to conduct adequate blood tests during Plaintiff's investigation.  At the time of the investigation, the Crime Lab allegedly had no manual or "required or consistent corrective action reports, peer review, quality assurance, or policies to ensure the integrity of evidence or the proper procedures to be followed by criminalists or lab technicians."  [FAC at ¶ 93].  Additionally, the County had yet to pursue accreditation for the Crime Lab.  [FAC at ¶ 93].[1]

The FAC further alleges that Defendant Milton produced at least four error-ridden forensic reports, signed off by Barry, in the years prior to Plaintiff's investigation.  [FAC at ¶ 112].  Defendant Barry allegedly conducted a review of Milton's work in 1999, found multiple deficiencies, and allegedly failed to discipline or re-train Milton.  [FAC at ¶ 111].  Defendant Barry and the County were also allegedly aware of Merritt's alleged failure to properly handle and record all evidence in his forensic reports prior to Plaintiff's investigation, allegedly evidenced by the County's intervention in many of Merritt's cases by outsourcing bloodstain pattern analysts to testify in court on Merrit's behalf. [FAC at ¶¶ 51, 113].    Plaintiff alleges that the lack of infrastructure and training at the Crime Lab is one of the underlying causes of Plaintiff's conviction and constitutional deprivations under the Fifth and Fourteenth Amendments.[2]

The FAC alleges that the County of San Diego is responsible for the unlawful actions of the Crime Lab and its employees during Plaintiff's investigation for its failure

---

[1] In its opposition, Plaintiff filed a request for judicial notice of official state court transcripts in which Crime Lab employees detail the protocols of the Crime Lab at the time of Plaintiff's investigation to "refute Defendants' argument that Plaintiff's [claims about the Crime Lab are] 'both conclusory and speculative.'" [Doc. No. 29].  Indeed, "the Court may judicially notice court filings and other documents in order to notice the existence of the document, but not for the truth of the facts asserted in the documents."  *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 990 (E.D. Cal. 2012).  However, because Plaintiff highlights portions of the documents that are potential disputed facts between the Parties, the request for judicial notice is **DENIED.**  Nonetheless, the documents are irrelevant for the present analysis.

[2] Plaintiff concedes that the Complaint improperly asserts its § 1983 claims under the Fourth and Eighth Amendments, and the Court strikes this language from the FAC.  [Doc. No. 28 at 5-6].

to conduct training or properly prescribe rules, regulations, and practices to prevent Plaintiff's wrongful conviction.

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted"— generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a recognizable theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand . . .  more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the collective facts pled "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "merely consistent with a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).   The Court need not accept as true "legal conclusions" contained in the complaint, *id.*, or other "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## IV.   DISCUSSION

Defendants presently move to dismiss from the FAC (1) Defendants Ryzdynski, Donohue, and Milton; (2) Defendant Barry in his individual capacity as supervisor of the Crime Lab; and (3) the County of San Diego as the municipality responsible for the Crime Lab.  The motion to dismiss solely concerns Plaintiff's claims of constitutional

deprivations and Defendants' liability pursuant to 42 U.S.C. § 1983. "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Ryzdynski and Donohue

As a threshold matter, this Court previously ruled that Plaintiff's individual § 1983 liability claims against Defendants Ryzdynski and Donohue could withstand a motion to dismiss. [Doc. No. 24 at 6]. The FAC does not amend any allegations as to these two Defendants. Accordingly, the Court considers Defendants' motion as to these two Defendants as a motion for reconsideration on its prior ruling. A motion for reconsideration is justified on any of three grounds: "(1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; (3) the need to correct clear or manifest error in law or fact in order to prevent manifest injustice." *Kowalski v. Anova Food, LLC*, 958 F. Supp. 2d 1147, 1153 (D. Haw. 2013). In the present motion, Defendants fail to provide the Court with any changes in controlling law, new evidence, or clear error in this Court's original decision as to Ryzdynski and Donohue. Accordingly, Plaintiff states § 1983 claims against both Defendants for the reasons detailed in its January 16, 2024 order.

### B. Milton

Defendants argue that Plaintiff fails to sufficiently plead facts giving rise to individual liability under § 1983 as to Defendant criminalist Connie Milton. Here, Plaintiff adds sufficient allegations to the FAC about Milton's personal involvement in Plaintiff's murder investigation. For example, Plaintiff alleges Defendant Milton "fabricated a report that only recorded [a] positive presumptive [blood] test" and omitted evidence of negative blood tests in her investigative report. [FAC at ¶ 34]. This allegation alone satisfies Plaintiff's burden to state a claim of individual § 1983 liability

against Milton—as a Crime Lab employee acting under the color of state law—for violating Plaintiff's constitutional rights under the Fifth and Fourteenth Amendments.

### C. Barry

Defendants argue that Barry should not be held individually liable for his actions as the supervisor of the Crime Lab at the time of Plaintiff's investigation because there exists nothing in the complaint that ties him to Plaintiff's investigation.  However, "a supervisory official is liable under § 1983 so long as 'there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Rodriguez v. Cnty. of Los* Angeles, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011)). The causal connection prong can be satisfied where a supervisor "knowingly refuses to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1208.   "Thus, a supervisor may be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Rodriguez*, 891 F.3d at 798 (internal citations and quotations omitted). The Ninth Circuit has found supervisory liability can be imposed on supervisors who are aware of conditions that would cause a constitutional deprivation and failed to act. *See Starr*, 652 F.3d at 1208 (supervisor liable where he knew of subordinate abuse of inmates causing injury and death); *see also Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) (supervisor could be found liable under § 1983 where he was deliberately indifferent to inmate safety due to known overcrowding in his facility).

Here, Plaintiff has sufficiently alleged that Barry was deliberately indifferent to Plaintiff's rights by knowingly allowing Milton and Merritt to continue working on cases, after multiple alleged instances of performance issues, without proper training.  Barry was allegedly on notice of Milton and Merritt's deficiencies as Crime Lab employees

well in advance of Plaintiff's murder investigation. Because these deficiencies ultimately may have led to Plaintiff's alleged constitutional deprivations, the Court finds there exists a sufficient causal connection between Barry's inaction and the constitutional deprivations asserted here. Therefore, the Court finds Plaintiff has stated a § 1983 claim against Barry in his individual capacity as the supervisor of the Crime Lab.

### D. County of San Diego

A government entity cannot be held vicariously liable for the acts of its employees under § 1983 unless a plaintiff can show that the entity's policy, practice, or custom caused the constitutional violation. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). As the Ninth Circuit has explained:

> Section 1983 authorizes civil actions for the "deprivation of any rights ... secured by the Constitution and laws" against a party acting under color of state law. 42 U.S.C. § 1983. Known as a "*Monell* claim," an individual may prevail in a § 1983 action against "municipalities, including counties and their sheriff's departments," if the "unconstitutional action 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Rivera v. Cnty. of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014) (quoting *Monell*, 436 U.S. at 690, 98 S.Ct. 2018).

*Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 740 (9th Cir. 2020). The elements of a *Monell* claim are: "(1) [Plaintiff] was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [Plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Id.* at 741. "A policy can be one of action or inaction." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Plaintiff's *Monell* claim, as asserted in the FAC, is based primarily on the County's oversight of the Crime Lab and failure to provide adequate training to Crime Lab

employees prior to and during Plaintiff's state court investigation.[3]   [FAC at ¶ 92].
Defendants argue that Plaintiff's *Monell* claim necessarily fails because she does not
identify any well-settled county customs followed by Crime Lab employees other than
Milton and Merritt.  Plaintiff argues that the County, in failing to accredit the Crime Lab
and continuing to allow Crime Lab employees to engage in alleged subpar performance
amounted to deliberate indifference to the constitutional rights of criminal suspects such
as Plaintiff.

The FAC alleges facts about the Crime Lab and the County that, taken as a whole,
can sufficiently state a claim for *Monell* liability. First, Milton and Merritt allegedly had a
pattern of issues with their work product that was allegedly known and not acted upon by
Barry.  According to the FAC, the County was allegedly on notice of at least Merritt's
deficiencies as it allegedly "hired outside [bloodstain pattern analyst] experts to testify in
cases where Merritt had been the assigned analyst trial."  [FAC at ¶ 113].   Plaintiff's
allegations that the Crime Lab, at the time of Plaintiff's investigation, was not accredited
and had no manual for the proper handling of evidence sufficiently allege a failure to
train Crime Lab employees to avoid constitutional violations committed by those
employees.  Therefore, the Court finds that Plaintiff states sufficient *Monell* allegations
against the County as the municipality responsible for the Crime Lab at the time of
Plaintiff's investigation.

## V.   MOTION TO STRIKE

Defendants further move to strike portions of the complaint that are immaterial,
scandalous, and/or impertinent.  [Doc. No. 27-1].  Specifically, Defendants mainly would
like to rid the complaint of generalized references to the San Diego Sheriff's Department

---

[3] The FAC does not add substantive allegations about the San Diego DA's office or the Sheriff's
Department to amount to *Monell* liability for the County.  Indeed, Plaintiff's opposition focuses solely
on the County's liability under § 1983 for its oversight of the Crime Lab rather than any alleged inaction
or action by the County leading to any alleged constitutional deprivations committed by the San Diego
District Attorney's Office or Sheriff's Department.

and San Diego District Attorneys Office as they might relate to a *Monell* claim against the County.[4]

"Before a motion to strike is granted the court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005).   Upon review of the FAC, the Court finds that the underlying facts of Plaintiff's complaint (1) concern multiple parties involved in Plaintiffs' state court investigation, and (2) are too complicated to be fragmented in the manner proposed by Defendants.  The Court is not convinced that the portions of the complaint identified by Defendant would not raise questions of fact in the future.  Accordingly, the motion to strike is **DENIED.**

## VI.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss and motion to strike are **DENIED.**  Defendants shall **ANSWER** the complaint, as modified by this order, no later than **April 30, 2024.**

It is **SO ORDERED**.

Dated:  April 16, 2024

Hon. Cathy Ann Bencivengo
United States District Judge

---

[4] As discussed above, Plaintiff does not assert a *Monell* claim against the County as it relates to the Sheriff's Department or the District Attorney's Office.

9

23-cv-1045-CAB-DDL