UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOROTIK,<br><br>               Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>               Defendants. | Case No.: 23-cv-1045-CAB-DDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR IN CAMERA REVIEW OF INTERNAL AFFAIRS DOCUMENTS**<br><br>[Dkt. No. 74] |

      Before the Court is the parties' joint motion for *in camera* review of Defendants Richard Empson, James Blackmon, Janet Ryzdynski, Connie Milton, and Bill Donohue's Internal Affairs records. Dkt. No. 74. The parties ask the Court to resolve the County of San Diego's general objections to producing Internal Affairs documents and then determine whether any of these records include sustained findings of "dishonesty, deception, failure to provide information or evidence, . . . fabrication, mishandling, or contamination of evidence, wrongful detention or arrest, illegal search, manipulation of eyewitness identifications, improper tactics during investigations, obstruction of justice, providing false, inaccurate or misleading information, concealment of exculpatory or impeachment information, [and] false testimony or statements." *Id.* Having considered the pleadings, the parties' arguments at the April 23, 2025 discovery hearing, and its *in camera* review of the disputed documents, the Court **GRANTS IN PART AND DENIES IN PART** the motion.

# I.

# BACKGROUND

### A. The Underlying Action

On February 13, 2000, plaintiff Jane Dorotik reported her husband, Robert Dorotik, missing. Dkt. No. 25 ("FAC") ¶ 26. His body was discovered the next day approximately 2.4 miles from their home. *Id.* Plaintiff was charged with the murder and, following her jury trial conviction in 2001, was sentenced to 25 years to life in prison. *Id.* ¶ 59.

On July 24, 2020, the San Diego Superior Court granted Plaintiff's petition for writ of habeas corpus and vacated her conviction. *Id.* ¶ 63. The San Diego District Attorney's Office ("the DA") announced it would retry Plaintiff but ultimately dismissed the murder charge against her in May 2022. *Id.* ¶ 64.

Plaintiff has continuously maintained her innocence. *Id.* ¶ 6. In this action under 42 U.S.C. § 1983, Plaintiff seeks to hold the County and certain County employees civilly liable for the conduct and policies that she alleges led to her conviction. *See generally* FAC.

Specifically, Plaintiff alleges that, during the 2000-2001 investigation, Sheriff's Department detectives Empson, Ryzdynski, and Donohue, and deputy Blackmon, ignored exculpatory forensic reports, omitted or altered eyewitness testimony from their written reports, and failed to disclose evidence to the DA and defense counsel. *Id.* ¶¶ 78-83, 28-29. Plaintiff also alleges the San Diego Sheriff's Department Regional Crime Lab ("Crime Lab") lacked proper infrastructure and training to "ensure the integrity of evidence or the proper procedures to be followed by criminalists or lab technicians." *Id.* ¶¶ 93-99. This included the Crime Lab having "no *Brady* policy and conduct[ing] no effective training to ensure that technicians fulfilled their *Brady* obligations." *Id.* ¶ 30. Furthermore, Plaintiff alleges Crime Lab personnel Connie Milton and Charles Merritt engaged in an "ongoing pattern and practice in which they both" mishandled or suppressed evidence and failed to follow approved procedures while performing blood tests, including during Plaintiff's investigation. *Id.* ¶¶ 31-54, 94.

Plaintiff brings the following claims for relief: (1) against all named Defendants, for depriving Plaintiff of the right to a fair trial free of unreliable eyewitness identifications tainted by police influence and of the right to have exculpatory material disclosed, *id.* ¶¶ 77-89; (2) against the County, for having a policy and practice of suppressing *Brady* materials and for failing to conduct training or prescribe rules, regulations, and practices to prevent Plaintiff's allegedly wrongful conviction, *id.* ¶¶ 92-107; and (3) against Ron Barry in his individual capacity as supervisor of the Crime Lab, for deliberate indifference to Plaintiff's rights by knowingly allowing Milton and Merritt to continue working on cases despite multiple documented instances of performance issues. ¶¶ 108-116.

B.  **The Discovery Dispute**

The disputed documents comprise 129 pages of records relating to Internal Affairs investigations of certain Defendants, corresponding to Bates Nos. 159905-159918 and 172459-172575. Dkt. No. 74 at 3. Plaintiff argues these documents "contain vitally important evidence for establishing Plaintiff's *Monell* theories for failure to train, supervise or implement appropriate policies, as well as offering evidence relevant to the individual defendants' knowledge, state of mind, habits and customs." Dkt. No. 75 at 7. Plaintiff alleges each of the disputed documents is responsive to either Request for Production Nos. Three[1] or Fifteen[2]. Dkt. No. 74 at 2-3. The County objects to production, arguing the documents (1) are protected by the official information privilege, (2) contain sensitive

---

[1]  "Any and all DOCUMENTS from any source reflecting or relating to allegations . . . of misconduct . . . or failure to follow policies, practices or protocols against Defendants EMPSON, BLACKMON, RYZDYNSKI AND DONOHUE, and any investigation of those allegations and/or discipline resulting from the allegations, where the misconduct relates to or reflects dishonesty, deception, . . . false statements, and/or misconduct." Dkt. No. 74 at 2-3.

[2]  "Any and all DOCUMENTS reflecting or relating or relating to allegations of incompetence, negligence, misconduct, . . . or failure to follow policies, practices, or protocols against . . . MILTON . . . , and any investigation of those allegations and/or discipline resulting from the allegations, including instances of dishonesty, deception, . . . false statements, and/or misconduct." Dkt. No. 74 at 3.

information that would "violate privacy rights of Defendants and members of the public", and (3) "are not proportional to the needs of this case." *Id.* at 3-4. The Court addresses these contentions in turn.

## II.

## **DISCUSSION**

### A. The official information privilege does not apply

"Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990). The County bears the burden of establishing the privilege applies and must make a "substantial threshold showing" to do so. *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995). Specifically, the "party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." *Id.* The affidavit must include:

> (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

*Id.* "If the nondisclosing party does not meet this initial burden, the court will order disclosure of the documents; if the party meets this burden, the court generally conducts an in camera review of the material and balances each party's interests." *Rogers v. Giurbino*, 288 F.R.D. 469, 481 (S.D. Cal. 2012) (overruling privilege claim where defendant did not submit appropriate declaration).

Here, Defendants have not met their burden because the affidavits submitted do not contain "a statement that the official has personally reviewed the material in question," a "specific identification of the governmental or privacy interest that would be threatened by

disclosure," or a "description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm." *Soto*, 162 F.R.D. at 613. The relevant declarations are from Deputy District Attorney Stephen Marquardt and Deputy District Attorney Kurt Mechals. Dkt. Nos. 75-6 ("Marquardt Decl."), 75-7 ("Mechals Decl.").

First, although Marquardt and Mechals reviewed hundreds of documents that are the subject of a different motion to compel pending before the Court, Dkt. No. 75, neither declare they have reviewed the Internal Affairs documents. *See* Marquardt Decl. ¶ 2 (listing Bates Nos. reviewed); Mechals Decl. ¶ 2 (same).

Second, the declarations do not specifically identify how disclosure of Internal Affairs documents would harm a governmental or privacy interest. Marquardt avers disclosure "would cause significant harm to the long-term integrity of the District Attorney's Office. Requiring disclosure of such notes and information would serve to discourage government attorneys from memorializing or sharing impressions, conclusions, opinions, or legal analysis with other prosecutors for fear of disclosure in other criminal cases, exploitation in civil lawsuits, or the risk of public disclosure." Marquardt Decl. ¶ 6. Mechals declares disclosure "would create a chilling effect against frank and open internal dialogue within the District Attorney's Office and with its prosecution team members, adversely impacting the essential legal work of the District Attorney's Office." Mechals Decl. ¶ 6. Even assuming Marquardt and Mechals had reviewed the Internal Affairs documents, these are the types of "general assertions" or "general claims of harm" that courts find insufficient to invoke the official information privilege. *See Soto*, 162 F.R.D. at 614; *Carr v. Cnty. of San Diego*, No. 19CV1139-JLS-MDD, 2020 WL 7074881, at *3 (S.D. Cal. Dec. 3, 2020) (no threshold showing where declaration warned disclosure "may discourage individuals from providing information; diminish the confidentiality of others who have provided information to the Department; [and] disrupt the vital, day to day operations of the department").

Third, the declarations fail to describe how production of the Internal Affairs documents pursuant to the Protective Order in this case would create a substantial risk of

harm to significant governmental or privacy interests. The declarations state "even if such documents were to be disseminated pursuant to a protective order, this would still not alleviate the significant impact of dispersing such documents in a civil case," Marquardt Decl. ¶ 7, and "[d]isclosure could erode the integrity and security of the records insofar as once the records are disseminated . . . no practical means exist to ensure that the records will not be disseminated further." Mechals Decl. ¶ 7. They continue with only generalized privacy and public interest concerns and fail to explain why disclosure of responsive documents in this case would be detrimental if done pursuant to a carefully crafted Protective Order, such as the one in place here. Dkt. No. 56. Thus, the Court finds the official information privilege does not apply.

**B.      The protective order adequately addresses privacy rights**

"Federal Courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests." *Soto*, 162 F.R.D. at 616. "Resolution of a privacy objection . . . requires a balancing of the need for information sought against the privacy right asserted." *Id.* Plaintiff's "need for the requested personnel files is great," *id.* at 617, because she alleges . Courts in the Ninth Circuit have recognized that "in civil rights cases against police departments, plaintiffs cannot usually obtain information of comparable quality from any other source." *Id.* (officer personnel files "may be quite relevant to issues involved in Plaintiff's excessive force claim, because such documents may reveal the defendant officers' patterns of behavior, as well as the City's response to such behavior"); *Kelly v. City of San Jose*, 114 F.R.D. 653, 667 (N.D. Cal. 1987) (stressing the strong public interest in uncovering civil rights violations of the type at issue in this case).

Here, any Internal Affairs records evidencing dishonesty by individual Defendants would be relevant to Plaintiffs' claims, and production of those records "subject to the existing Protective Order will adequately protect the privacy interests" of Defendants. *Morton v. Cnty. of San Diego*, No. 21-CV-1428-MMA-DDL, 2023 WL 6150402, at *11 (S.D. Cal. Sept. 20, 2023); *accord Stuart v. Cnty. of Riverside*, No. 522CV701SPGMAR,

2023 WL 4826231, at *2 (C.D. Cal. June 15, 2023) ("[P]rivacy objections can be appropriately addressed by: (1) redacting any personally identifying information from the documents produced; and (2) producing documents under a protective order to minimize any invasion into the individual's privacy rights."). To the extent the Internal Affairs records contain personal identifiable information regarding Defendants (other than their names and titles), such as marital status, spouse names, children's names, driver's license numbers, Social Security numbers, or home addresses, the County may redact that information. *Stuart*, 2023 WL 4826231, at *3-4.

### C. The documents are relevant and proportional to the needs of the case

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The Internal Affairs documents as to which the Court is compelling production are relevant to Plaintiff's case. Defendants' arguments that "Internal Affairs records such as these are inadmissible remedial measures evidence" and are "inadmissible as highly prejudicial" raise issues of admissibility, not whether Plaintiff is entitled to discovery under Rule 26. And Defendants' argument that Plaintiff "can obtain general information concerning the Internal Affairs investigations by less intrusive means by deposing the individual defendants" runs into the same issue discussed in the privacy rights section above. *See Soto*, 162 F.R.D. at 617, n.8 ("This Court rejects defense counsel's statements that Plaintiff is able to obtain comparable information through interrogatories or depositions of the individual officer-defendants."). The Court overrules this objection.

## III.
## CONCLUSION

Having concluded none of the objections shield the Internal Affairs records from disclosure, the Court turns to whether the records are responsive to Plaintiff's requests for production. As stated on the record at the April 23 hearing, the Court grants the motion to

compel as to those documents relating to misconduct, or allegations of misconduct, arguably reflecting dishonesty, deception, mishandling of evidence, or false statements. Defendants shall produce these documents to Plaintiff by **May 2, 2025**. The Court denies the motion as to all other documents. Those findings are summarized in this chart:

| Bates No. | Motion to Compel |
|---|---|
| CSD00172459-172465 | Grant |
| CSD00172466-172470 | Deny |
| CSD00172471-172494 | Deny |
| CSD00172495-172513 | Deny |
| CSD00172514-172523 | Deny |
| CSD00172524 | See paragraph below |
| CSD00172525-172550 | Grant |
| CSD00172551-172575 | Deny |
| CSD00159905-159918 | Deny |

The document corresponding to Bates No. CSD00172524 is an audio file. Defense counsel shall listen to the audio file and produce it to Plaintiff if it contains any indicia of "dishonesty, deception, . . . false statements, and/or misconduct" such that it would be responsive to Plaintiff's Request for Production Nos. 3 and/or 15. *See* Dkt. No. 79-1 at 5, 18. If, on the other hand, the audio file merely memorializes the information already contained in the documents corresponding to Bates Nos. CSD00172495-172523, Defendants need not produce it to Plaintiff.

**IT IS SO ORDERED.**

Dated: April 28, 2025

*[signature: David Leshner]*

Hon. David D. Leshner
United States Magistrate Judge