1
2
3
4
5
6
7                      UNITED STATES DISTRICT COURT
8                    SOUTHERN DISTRICT OF CALIFORNIA
9

10   JANE DOROTIK,                          Case No.:  23-cv-1045-CAB-DDL

11                      Plaintiff,
                                            **ORDER GRANTING IN PART AND**
12   v.                                     **DENYING IN PART**
                                            **(1) PLAINTIFF'S MOTION TO**
13   COUNTY OF SAN DIEGO, et al.,           **COMPEL PRODUCTION OF**
                                            **DOCUMENTS, (2) DEFENDANTS'**
14                      Defendants.         **MOTION TO COMPEL FURTHER**
                                            **RESPONSE TO LOS ANGELES**
15                                          **INNOCENCE PROJECT**
                                            **SUBPOENA, AND**
16                                          **(3) DEFENDANTS' MOTION TO**
                                            **COMPEL FURTHER RESPONSE TO**
17                                          **KERRY STEIGERWALT**
18                                          **SUBPOENA**
19
20                                          **[Dkt. Nos. 75, 80, 100]**
21
22

23       Before the Court are (1) Plaintiff's motion to compel production of documents by

24   Defendants (Dkt. No. 75) and Defendant County of San Diego's motions to compel further

25   responses to subpoenas issued to third parties (2) Los Angeles Innocence Project ("LAIP")

26   (Dkt. No. 80) and (3) Kerry Steigerwalt (Dkt. No. 100).  After considering the moving

27   papers, the parties' supplemental briefs, and the arguments of counsel, the Court GRANTS

28   IN PART and DENIES IN PART the motions as set forth below.

# I.

## BACKGROUND

On February 13, 2000, Plaintiff Jane Dorotik reported her husband, Robert Dorotik, missing. Dkt. No. 25 ("FAC") ¶ 26. His body was discovered the next day approximately 2.4 miles from their home. *Id.* Plaintiff was charged with the murder and, following her jury trial conviction in 2001, was sentenced to 25 years to life in prison. *Id.* ¶ 59.

On July 24, 2020, the San Diego Superior Court granted Plaintiff's petition for writ of habeas corpus and vacated her conviction. *Id.* ¶ 63. The San Diego District Attorney's Office ("DA") announced it would retry Plaintiff, but ultimately dismissed the murder charge against her in May 2022. *Id.* ¶ 64.

Plaintiff has continuously maintained her innocence. *Id.* ¶ 6. In this action under 42 U.S.C. § 1983, Plaintiff seeks to hold the County and certain County employees civilly liable for the conduct and policies that she alleges led to her conviction. *See* FAC.

As relevant here, Plaintiff alleges that, during the 2000-2001 investigation, Sheriff's Department detectives Empson, Ryzdynski, and Donohue, and deputy Blackmon, ignored exculpatory forensic reports, omitted or altered eyewitness testimony from their written reports, and failed to disclose exculpatory evidence to the DA and defense counsel. *Id.* ¶¶ 28-29, 78-83. Plaintiff also alleges the San Diego Sheriff's Department Regional Crime Lab ("Crime Lab") withheld exculpatory evidence and lacked proper infrastructure and training to "ensure the integrity of evidence or the proper procedures to be followed by criminalists or lab technicians." *Id.* ¶¶ 30, 93-99. This included the Crime Lab having "no *Brady* policy and conduct[ing] no effective training to ensure that technicians fulfilled their *Brady* obligations." *Id.* ¶ 30. Furthermore, Plaintiff alleges Crime Lab personnel Connie Milton and Charles Merritt engaged in an "ongoing pattern and practice in which they both" mishandled or suppressed evidence and failed to follow approved procedures while performing blood tests, including during Plaintiff's investigation. *Id.* ¶¶ 31-54, 94. Plaintiff alleges the DA failed to turn over exculpatory materials, failed to correct false and misleading evidence, and misrepresented evidence. *Id.* ¶¶ 55-56

Plaintiff brings the following claims for relief against: (1) all named Defendants for depriving Plaintiff of the right to a fair trial free from unreliable eyewitness identifications tainted by police influence and of the right to have exculpatory material disclosed, *id.* ¶¶ 77-89; (2) the County for having a policy and practice of suppressing *Brady* materials and for failing to conduct training or prescribe rules, regulations, and practices to prevent Plaintiff's allegedly wrongful conviction, *id.* ¶¶ 92-107; and (3) Ron Barry in his individual capacity as supervisor of the Crime Lab for deliberate indifference to Plaintiff's rights by knowingly allowing Milton and Merritt to continue working on cases despite multiple documented instances of performance issues. ¶¶ 108-116.

## II.

## <u>DISCUSSION</u>

At the outset, the Court commends the parties for their civility, cooperation, and extensive meet and confer efforts that, to the parties' credit, have significantly reduced the number of disputed documents. However, this dispute has spanned four months, five hearings, multiple rounds of supplemental briefings and amended privilege logs, and *in camera* review of thousands of pages of documents. This is the case, at least in part, because of the sweeping nature of both sides' requests for written discovery. Among other very broad requests, Plaintiff's RFP No. 5 seeks "ALL COMMUNICATIONS" between the DA's Office and the Crime Lab relating to the Dorotik case, Dkt. No. 79 at 6, and Defendants' subpoena to LAIP seeks "any and all documents" relating to Robert Dorotik and his murder. Dkt. No. 80-2 at 6. Although, for example, Defendants argue certain of Plaintiff's requests "would capture a large and sweeping set of records, including those . . . that have no relation to any of the malfeasance alleged in this suit" and would go "far beyond the alleged mishandling or withholding of evidence that are primary issues," Defendants did not require Plaintiff to narrow her requests or seek to do so through judicial intervention. Instead, it appears Defendants listed all documents, including those over which they had relevancy and proportionality concerns, on a privilege log and provided them for *in camera* review. The Court has reviewed the documents *in camera* to resolve

assertions of privilege and work product, but the Court is not in a position to make document-by-document relevancy findings.  That job is more appropriate for the responding party to undertake.  In other words, the parties did an excellent job narrowing down a daunting number of disputes for the Court to resolve.  But that initial number may not have been so daunting had the parties propounded more narrowly tailored discovery requests and subpoenas at the outset, or had the responding party (or third party) insisted that the propounding party tailor overbroad requests before the responding party compiled vast troves of potentially responsive documents that were thereafter included on privilege logs and became the subject of discovery motions.

**A.    Plaintiff's Motion to Compel Production  (Dkt. No. 75)**

Plaintiff moves to compel the County to produce "Brady-related materials" and "documents and email communications regarding" the Crime Lab that are in the possession of the DA's Office.  Dkt. No. 75 at 7.  The County is withholding these documents on the bases that they are protected by the official information privilege, the deliberative process privilege, the attorney-client privilege, and the work product doctrine.

**1.    Official Information Privilege**

The County asserts the official information privilege over every disputed document in Defendants' Privilege Log 1 (Dkt. No. 75-3).

**i.    Legal principles**

Federal law applies to assertions of privilege in this federal civil rights action.  *See United States v. Zolin*, 491 U.S. 554, 562 (1989)[1].  "Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990).  The County bears the burden of establishing the privilege applies,

---

[1]  All citations, subsequent history, and parallel reporter citations are omitted unless otherwise noted.  In direct quotes, all internal quotation marks, brackets, ellipses and footnotes are omitted, and all emphasis is added, unless otherwise noted.

*Shiflett by & through Davenport v. City of San Leandro*, No. 21-CV-07802-LB, 2023 WL 4551077, at *2 (N. D. Cal. July 13, 2023), and must make a "substantial threshold showing" to do so. *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995). The "party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." *Id.* The affidavit must include:

> (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

*Id.*

### ii. Discussion

Because the affidavits submitted by the County fail at elements three and four, the Court overrules all official information privilege objections. As to the third element, the "party resisting discovery must *specifically* describe how disclosure of the requested documents in that particular case . . . would be harmful." *Id.* at 614 (emphasis in original). "[G]eneral claim[s] of harm to the public interest [are] insufficient to overcome the burden placed on the party seeking to shield material from disclosure." *Id.* Courts have found that affidavits lack requisite specificity where they state only that disclosure could discourage "frank discussions for use in developing new or modified policies and procedures[2]," could "discourage individuals from providing information; diminish the confidentiality of others who have provided information to the Department; disrupt the vital, day to day operations

---

[2] *Id.*

5

of the department[3]," could make agencies "no longer want to investigate complaints and make recommendations for policy and procedure improvements if the information could be made available to plaintiffs in subsequent civil suits[4]," or could "have a chilling effect on what supervisors put in writing[5]."

The County submitted two affidavits—one from Deputy District Attorney Stephen Marquardt, Dkt. No. 75-6 ("Marquardt Decl.") and one from Deputy District Attorney Kurt Mechals, Dkt. No. 75-7 ("Mechals Decl.")—that make "general claim[s] of harm" insufficient to meet the County's burden. Mechals' declaration warns disclosure "would create a chilling effect against frank and open internal dialogue within the [DA's] office," discourage "prosecutors' willingness to openly discuss their cases and document their reasoning, invite uninformed second-guessing of tens of thousands of cases prosecuted annually, expose cases to undue political and public pressure . . . , potentially violate privacy rights of persons involved in the criminal prosecution," and "compromise investigations and deter cooperation." Mechals Decl. ¶ 6. Marquardt's declaration warns disclosure "would cause significant harm to the long-term integrity of the [DA's] Office. . . discourage government attorneys from memorializing or sharing impressions, conclusions, opinions, or legal analysis with other prosecutors for fear of disclosure in other criminal cases, exploitation in civil lawsuits, or the risk of public disclosure," and would "chill frank and open consideration of Brady Index placement." Marquardt Decl. ¶ 6. Neither of the affidavits "*specifically* describe" how disclosure would be harmful "in this *particular* case." *Soto*, 162 F.R.D. at 613. To the contrary, these are the types of general assertions

---

[3]  *Carr v. Cnty. of San Diego*, No. 19CV1139-JLS-MDD, 2020 WL 7074881, at *3 (S.D. Cal. Dec. 3, 2020).

[4]  *Swartwood v. Cnty. of San Diego*, No. 12CV1665-W BGS, 2013 WL 6670545, at *7 (S.D. Cal. Dec. 18, 2013).

[5]  *Newell v. Cnty. of San Diego*, No. 12CV1696-GPC BLM, 2013 WL 1432141, at *4 (S.D. Cal. Apr. 8, 2013).

of harm that courts in this District have held preclude reliance on the official information privilege. *See supra* footnotes 2-5.

The affidavits here also fail to satisfy the fourth element: describing how disclosure even "subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests." *Soto*, 162 F.R.D. at 613. Mechals "believe[s] a protective order would not adequately alleviate the risk of harm from dispersing such documents in a civil case" because "once the records are disseminated to persons outside the prosecution team, no practical means exist to ensure that the records will not be disseminated further." Mechals Decl. ¶ 7. Rather than address how disclosure under a carefully crafted protective order would create a substantial risk of harm, these statements appear to conclude that *no* protective order would mitigate the risk of harm. *But see Soto*, 162 F.R.D. at 613 ("The use of a carefully crafted protective order, under which only Plaintiff and his lawyer have access to the material, substantially reduces the confidentiality interests asserted by Defendants."); *Chism v. Cnty. of San Bernardino*, 159 F.R.D. 531, 535 (C.D. Cal. 1994) (endorsing use of protective order to keep internal use-of-force tactics secret); *Hampton v. City of San Diego*, 147 F.R.D. 227, 231 (S.D. Cal. 1993) (same to protect privacy interests of police officers).

Marquardt's declaration states production of documents even pursuant to a protective order might make prosecutors "avoid collaborating with colleagues and memorializing notes in private case management software for fear that such information would be reviewed by someone outside the prosecutor's office" and "limit their discussion of case strategy or interview observations over concerns that it could be considered by the criminal defense bar in another matter," and may discourage full and open analysis "on whether a person should be placed on the Brady Index because of the possibility their analysis would become a deposition exhibit used at the deposition of the person being considered for Brady Index placement." Marquardt Decl. ¶ 7. This affidavit also fails to discuss how the terms of a carefully crafted protective order, such as the one to which the parties jointly stipulated at Dkt. No. 56, would not alleviate these potential harms. The

Protective Order has provisions that address many of the concerns raised in the affidavits. *See* Dkt. No. 56 ¶ 4 (review of confidential information); ¶ 5 (production of confidential materials for inspection); ¶ 6 (depositions involving disclosure of confidential information); ¶¶ 9, 11, 14, 21 (reproduction, storage, and return or destruction of confidential information); ¶ 27 (recourse for violations of these provisions). The County has not met its threshold burden to show the official information privilege applies.

## 2. **Deliberative Process Privilege**

The County also asserts the deliberative process privilege over every disputed document in Defendants' Privilege Log 1 (Dkt. No. 75-3).

### i. **Legal principles**

"Federal law recognizes the deliberative process privilege, which shields confidential inter-agency memoranda on matters of law or policy from public discourse." *Swartwood*, 2013 WL 6670545, at *2 (citing *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir. 1988)). This privilege applies to documents that "reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). To be protected by the deliberative process privilege, "a document must be both (1) predecisional or antecedent to the adoption of agency policy and (2) deliberative, meaning it must actually be related to the process by which policies are formulated." *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000). A predecisional document is one "prepared in order to assist an agency decisionmaker in arriving at his decision," and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Maricopa Audubon Soc'y v. U.S. Forest Serv.,* 108 F.3d 1089, 1093 (9th Cir.1997). A predecisional document is part of the deliberative process if "the disclosure of [the] materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Carter v.*

*United States Dep't of Com.*, 307 F.3d 1084, 1090 (9th Cir. 2002). "Purely factual matter is not deliberative, but the privilege applies if the factual matter cannot be segregated from the deliberative material within the document." *Crabtree v. Cnty. of Butte*, No. 2:20-CV-0675-KJM-KJN, 2020 WL 7319510, at *3 (E.D. Cal. Dec. 11, 2020) (citing *Warner*, 742 F.2d at 1161)). The County bears the burden of establishing the deliberative process privilege applies. *Shiflett*, 2023 WL 4551077, at *2.

### ii.    Documents containing purely factual information

The Court begins with the documents that it previously identified as potentially containing purely factual material: Bates Nos. CSD00137689-137708; CSD00138304-138316[6]; CSD00138352-138361[7]; CSD00138369-138378; and CSD00138405-138431. Dkt. No. 91 at 2-3. Except for CSD00138352-138353[8], which correspond to a two-page internal memo prepared by a deputy district attorney, these are factual records considered by the Brady Committee. The Court ordered the County to "file a supplemental brief setting forth its position as to whether the documents identified above may be produced as purely factual material." *Id.* at 3. The County contends the factual material in these documents "is so interwoven with the deliberative material that it is not severable" because disclosure of these documents would reveal "the Brady Committee's thought process regarding which records they considered important to review." Dkt. No. 98 at 2-3 (citing *Martins v. United States Citizenship & Immigr. Servs.*, 962 F. Supp. 2d 1106, 1121 (N.D. Cal. 2013) (To determine whether a document is factual or deliberative in nature, "the central question is . . . whether the requested information independently reflects the

---

[6]    These pages are replicated at CSD00078201-78214. The motion is likewise granted as to those Bates Nos.
[7]    CSD00138354-138361 are partially replicated at CSD00138447-138452. The motion is likewise granted as to those Bates Nos.
[8]    These pages are replicated at CSD00138445-138446. The motion is likewise denied as to those Bates Nos.

deliberative process itself.")).  The Court denies the motion to compel as to the two-page memo and grants the motion to compel as to the other documents.

The two-page memo was "prepared by a Deputy District Attorney for the review of the Brady Committee" and "provides a detailed analysis for the Committee's consideration."  Dkt. No. 98 at 4.  These types of "memoranda go to the heart of the deliberative and policy-making processes."  *Warner*, 742 F.2d at 1161.  In *Warner*, the Ninth Circuit held that an internal memo was protected by the deliberative process privilege because its "[a]nalyses and recommendations play[ed] a critical role in the Commission's" ultimate decision.  *Id.*  The Ninth Circuit reasoned that compelled disclosure of such memoranda "chills frank discussion and deliberation in the future among those responsible for making governmental decisions" and "almost certainly injured the quality of agency decisions."  *Id.*  Disclosure of the DA's two-page memo would have a similarly injurious effect here.

The deliberative process privilege does not shield the rest of the documents identified above.[9]  "The deliberative process privilege is a qualified one," and "[a] litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure."  *Warner*, 742 F.2d at 1161. In deciding whether to override the privilege and allow discovery, courts consider four factors: "1) the relevance of the evidence; 2) the availability of other

---

[9]    It is unclear whether all these documents were previously produced to Plaintiffs. The County states in its supplemental brief that many of these documents were, but that it would have to "go through and double-check" to ensure that all of them were.  Dkt. No. 98 at 4-5; Dkt. No. 114 - May 27, 2025 Hearing Trans. ("May 27 Trans.") at 83:11-85:20.  The Court previously indicated "to the extent that these documents were already produced, I would not be inclined to order . . . them to be produced again out of the D.A.s' file…. They are clearly relevant to the claims and defenses in the case. If they were not already produced, they need to be produced. The source of them doesn't matter. As long as the Plaintiff has them, they don't have to come from the D.A.'s file." *Id.* at 85:16-87:2.  The Court now confirms that tentative ruling.

evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019). Weighing those factors, the Court finds Plaintiff's need for the documents outweighs the deliberative process privilege.

**Relevance**. This factor weighs heavily in favor of disclosure. After *in camera* review, the Court is convinced these documents are relevant at least to Plaintiff's claims against some of the individual Defendants, and likely against the County under *Monell*. These documents are Internal Affairs records for Richard Empson; employment, training, and corrective action records for Charles Merritt; corrective actions and proficiency test evaluations for Connie Milton; and a court filing in support of Plaintiff's previous motion to exclude blood and DNA evidence at the preliminary hearing. The substance of these records aligns with the substance of many of Plaintiff's claims. *See infra* I-A.

**Availability of other evidence**. The Court discusses the lack of clarity in the record regarding this factor in Footnote 9 above. To the extent these documents—or other documents containing the same underlying factual information—have not already been produced to Plaintiff, they must be.

**Government's role**. This factor weighs in favor of disclosure. Often, "[t]he fact that a governmental entity's action is the focal point of litigation weighs against upholding the deliberative process privilege." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1028 (E.D. Cal. 2010) (collecting cases); *Karnoski*, 926 F.3d at 1206 (concluding without discussion that this factor favors disclosure where "the government—the Executive—is a party to and the focus of the litigation"). So too here. The County's alleged actions are the focal point of this litigation.

**Hinder frank discussion**. This factor weighs against disclosure, but only minimally. Deputy District Attorney Marquardt warns disclosure of "materials review[ed] or opinions regarding the placement of someone on the Brady Index would chill frank and open consideration of Brady Index placement." Marquardt Decl. ¶ 6. But the Court is not

ordering disclosure of any internal discussions. *Cf. Crabtree*, 2020 WL 7319510, at *6 (noting disclosure of an internal memo "is too likely to lead the drafting attorney to rose-color the views presented therein" or make attorneys "fear that putting pen to paper will expose them or their office to future embarrassment or liability"). Rather, it is ordering the disclosure of factual records. This disclosure may reveal the types of records relied upon by the Brady Committee, but it will not reveal any reactions, analyses, or recommendations regarding those records. Put another way, there is no frank discussion to chill.

On balance, the deliberative process privilege must yield to Plaintiff's need for these documents containing purely factual information.

### iii. All other documents in Defendants' Privilege Log 1

The Court next turns to the remaining 53 entries in Defendants' Privilege Log 1 over which the County asserts the deliberative process privilege. The County contends the deliberative process privilege applies in two contexts. First, some of the documents are predecisional and deliberative because "they were created directly in anticipation of prosecution, opposing Plaintiff's petition for habeas corpus, the 2021-2022 preliminary hearing, and/or the ultimate dismissal of charges against Plaintiff" and they "contain opinions, recommendations, and/or advice about practices in prosecutorial decision making within the District Attorney's Office." Dkt. No. 77 at 9-10. Second, some of the documents are predecisional and deliberative because, as discussed above, they reveal the inner workings of the Brady Committee as it decides whether to place certain Crime Lab employees on the Brady Index.

After reviewing the documents *in camera*, the Court concludes that a few of them are not predecisional or deliberative. Consider the sheet of notes at CSD00138438 and the spreadsheet at CSD00077928. These documents appear to contain the type of purely factual material that that the Court has already noted is unprotected. Although the documents reference the Dorotik retrial, and were perhaps even created in anticipation thereof, they do not evince any type of deliberation among the decisionmakers. Such isolated data can be "segregated from the deliberative material within the document" and

thus fall outside the bounds of the deliberative process privilege. *Crabtree*, 2020 WL 7319510, at *3 Other documents that are unprotected for similar reasons are: CSD00138320-138333; CSD00138364; and CSD00089509.

The Court agrees with the County that all other documents in Defendants' Privilege Log 1 are predecisional and deliberative. The question for these documents, then, is whether Plaintiff's need for the information outweighs the privilege. For most of the disputed documents, the answer is no.

Some of these documents are very similar to the two-page memo that the Court previously concluded was protected because it goes "to the heart of the deliberative and policy-making processes." *Warner*, 742 F.2d at 1161. *See infra* II-A-3-ii. These documents are either also internal memos or are otherwise replete with discussions of Brady Index placement or re-prosecution. The compelled disclosure of these documents would defeat "one of the main purposes of the privilege: 'to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny.'" *Crabtree*, 2020 WL 7319510, at *6 (quoting *Carter*, 307 F.3d at 1089). The Court concludes that this factor weighs so heavily against disclosure that the deliberative process privilege must be upheld for these documents: CSD00077720-77723; CSD00078183-78191; CSD00078192-78200; CSD00083928-83932; CSD00088198-88202; CSD00090492; CSD00138293-138303; and CSD00138439-138441.

Some of these documents contain a mixture of protected deliberation and unprotected underlying facts. Although those underlying facts are relevant to Plaintiff's claims, the information is also available in other forms that would not require compelled disclosure of internal agency discussion. For example, CSD00137684-137686 is a memo from a deputy district attorney (1) posing questions and making suggestions as to whether Empson should be placed on the Brady Index and (2) summarizing Empson's misconduct that prompted the DA to consider placing him on the Brady Index in the first place. The first part of that memo is exactly what the deliberative process privilege seeks to protect. The second is not, and is highly relevant to Plaintiff's claims against Empson in his

13

individual capacity.  But in reviewing the documents *in camera*, the Court is confident that other documents containing the highly relevant underlying facts have either already been produced to Plaintiff or will be forthwith.  *See* Dkt. No. 88 at 8 (compelling production of CSD00172525-172550, documents summarizing the same misconduct discussed in CSD00137684-137686).  The availability of other evidence containing the same information weighs against compelled disclosure here.  The Court denies the motion to compel on these grounds as to these documents: CSD00137687-137688; CSD137714-137715; CSD00137716-137717; CSD00138287-138292; CSD00138317-138319; and CSD00138432-138437.  Adjacent to this category of documents are Bates Nos. CSD00138391-138397.  These pages contain a mixture of protected deliberation and unprotected underlying facts, but the record is unclear as to whether the underlying facts have already been produced to Plaintiff.  Defendants shall produce these underlying facts (Bates Nos. 138392 - top of 138396), but may redact the notes outside that page range.

Finally, some of these documents contain information that is only minimally relevant to Plaintiff's claims, if at all.  For example, CSD00138281-138285 is an email thread among deputy district attorneys discussing the Brady Index where one email out of nearly a dozen raises a question about Merritt's testimony in a case, and the remainder of the emails merely detail the facts of that case (completely divorced from Merritt's testimony) and the procedure for obtaining Brady material (without discussing any of the Brady material).  Because the relevance of these documents is so low, and because there is at least some risk of compelled disclosure chilling frank and open internal agency discussion, the Court concludes the deliberative process privilege does not yield to Plaintiff's need for these documents:  CSD00077858-77860; CSD00078043-78112; CSD00078113-78182; CSD00090511-90837;  CSD00091059-91066;  CSD00087561-87569;  CSD00087984-87985;   CSD00087135-87136;   CSD00089515-89519;   CSD00089525-89717; CSD00089718;   CSD00137718-137719;   CSD00138279-138280;   CSD00138348; CSD00138365;   CSD00138367-138378;   CSD00138442;   CSD00138443-138444; CSD00138379-138390; and CSD00138398-138399.

With the foregoing in mind, the Court rules on the motion to compel production for each of the disputed documents in Defendants' Privilege Log 1 as follows:

### Defendants' Privilege Log No. 1 (Dkt. No. 75-3)

| Bates No. | Document Title | Objection | Motion to Compel |
|---|---|---|---|
| CSD00137684-137686 | Brady Index First Look Summary re Richard Empson | Official Information; Deliberative Process | DENY |
| CSD00137687-137688 | 5/22/2022 Email regarding Pitchess process re Richard Empson | Official Information; Deliberative Process | DENY |
| CSD00137689-137708 | IA Materials from 1985 re Richard Empson | Official Information; Deliberative Process | GRANT |
| CSD00137714-137715 | 10/28/2021 Brady Index File Review for Charles Merritt | Official Information; Deliberative Process | DENY |
| CSD00137716-137717 | 1/24/22 Brady Index File Review for Charles Merritt | Official Information; Deliberative Process | DENY |
| CSD00137718-137719 | 3/2/22 Email re Exp Index File Rev Req Charles Merritt | Official Information; Deliberative Process | DENY |
| CSD00138279-138280 | Brady Index File Review; Strategic Approach to the Brady Process | Official Information; Deliberative Process | DENY |
| CSD00138281-138285 | 4/5/22 Email re Brady Index File Review re Charles Merritt | Official Information; Deliberative Process | DENY |
| CSD00138287-138292 | Brady Index File Review re Charles Merritt | Official Information; Deliberative Process | DENY |
| CSD00138293-138316 | 8/11/21 Memo re Charles Merritt and attachments | Official Information; Deliberative Process | 138293-138303: DENY<br>138304-138316: GRANT |
| CSD00138317-138319 | 9/4/21-10/14/24 Progress Report re Merritt Brady Index | Official Information; Deliberative Process | DENY |
| CSD00138320-138333 | 6/4/21-7/19/21 Emails re Merritt and Brady Index | Official Information; Deliberative Process | GRANT |
| CSD00138348 | 7/10/21 Email re Brady Inquiry re Connie Milton | Official Information; Deliberative Process | DENY |
| CSD00138349-138363 | 11/1/11 Brady Index First Look Summary re Connie Milton; Correspondence and Related Materials | Official Information; Deliberative Process | 138352-138353: DENY<br><br>138349-138351 and 138354-138361: GRANT |
| CSD00138364 | 8/23/12 Progress Report Note | Official Information; Deliberative Process | GRANT |

| CSD00138365-138366 | 10/5/23 Email correspondence re Connie Milton Appeal Requests re Brady | Official Information; Deliberative Process | DENY |
|---|---|---|---|
| CSD00138367-138378 | 7/10/23 Email Correspondence re Request for Appeal with Attachments | Official Information; Deliberative Process | DENY |
| CSD00138379-138390 | 2/26/21-5/25/21 Emails re unrelated case referencing Milton and Dorotik case | Official Information; Deliberative Process | DENY |
| CSD00138391-138397 | 9/10/20 Brady Index First Look Summary re Connie Milton | Official Information; Deliberative Process | GRANT IN PART, DENY IN PART. See note above for redactions. |
| CSD00138398-138399 | 5/26/21 Email re unrelated case referencing Milton and Dorotik case | Official Information; Deliberative Process | DENY |
| CSD00138400-138431 | 11/1/21 Email re unrelated cases referring Milton, Merritt, and Dorotik case and attachments | Official Information; Deliberative Process | 138400-138404: DENY 138405-138431: GRANT |
| CSD00138432-138437 | 10/20/11-11/1/21 Emails re unrelated cases referencing Milton, Merritt, and Dorotik case and attachment | Official Information; Deliberative Process | DENY |
| CSD00138438 | Memo re discussion with DA | Official Information; Deliberative Process | GRANT |
| CSD00138439-138441 | 9/25/20 Progress Report Notes re Connie Milton Brady Index | Official Information; Deliberative Process | DENY |
| CSD00138442 | 5/25/21 Email re unrelated case referencing Milton and Dorotik case | Official Information; Deliberative Process | DENY |
| CSD00138443-138444 | 5/27/21-5/28/21 Email re unrelated case referencing Milton | Official Information; Deliberative Process | DENY |
| CSD00138445-138457 | 11/1/11 Brady Index First Look Summary re Connie Milton | Official Information; Deliberative Process | 138445-138446: DENY 138447-138452: GRANT 138453-138457: GRANT IN PART, DENY IN PART.[10] |

---

[10]  The County shall produce these pages, but may redact sections 5-8 on pages 138456-138457.  The balancing analysis weighs against disclosing these notes because doing so would chill deliberative speech.

| CSD00090491-90510 | Attorney Impressions Summarizing Witness Strategy | Official Information; Deliberative Process | 90492: DENY 90491; 90493-90510: GRANT |
|---|---|---|---|
| CSD00087127-87130[11] | 4/12/2021 BPA Expert Search Emails | Official Information; Deliberative Process | DENY |
| CSD00087135-87136 | 1/10/2022 Charles Merritt Discovery in Dorotik Email | Official Information; Deliberative Process | DENY |
| CSD00083928-83932 | Dorotik Case Situation | Official Information; Deliberative Process | DENY |
| CSD00077720-77723 | 9/25/2020 Dorotik Lab Discovery Email | Official Information; Deliberative Process | DENY |
| CSD00077858-77860 | Internal Notes on Anthony DeMaria (Trial Outline) | Official Information; Deliberative Process | DENY |
| CSD00077928 | Gannett SDT Materials (Trial Strategy Notes) | Official Information; Deliberative Process | GRANT |
| CSD00078043-78112 | Lab Evidence Notes, Attorney Impressions and Case Trial Strategy | Official Information; Deliberative Process | DENY |
| CSD00078113-78182 | Lab Evidence Notes, Attorney Impressions and Case Trial Strategy | Official Information; Deliberative Process | DENY |
| CSD00078183-78191 | Credibility Memo re Charles Merritt (Draft), Attorney Impressions and Case Trial Strategy | Official Information; Deliberative Process | DENY |
| CSD00078192-78214 | Credibility Memo re Charles Merritt, Attorney Impressions and Case Trial Strategy | Official Information; Deliberative Process | 78192-78200: DENY 78201-78214: GRANT |
| CSD00090511-90837[12] | Lab Evidence Case Notes, Attorney Impressions and Case Trial Strategy | Official Information; Deliberative Process | DENY |
| CSD00091059-91066 | Dorotik DNA Attorney Impressions and Case Trial Strategy | Official Information; Deliberative Process | DENY |

[11]  CSD00087127 is an email from Kurt Mechals titled "BPA Expert Search." The email is blank except for the word "Notes."  The next page may contain the actual notes (names and contact information for the BPA experts), but the Court cannot say for sure because the page is not Bates numbered.  If the contact information corresponds to Bates Nos. CSD00087128-87130, the Court denies the motion as to these documents.  They may reflect the deliberative process, and are of such little relevance that the balancing analysis weighs against disclosure.

[12]  The Court was unable to find any documents after CSD00090677.  The documents provided *in camera* stop at 91057.  The Court rules on these Bates numbers only.

| CSD00087561-87569 | 8/28/2021 Exhibits for Testimony Attorney Trial Strategy | Official Information; Deliberative Process | DENY |
|---|---|---|---|
| CSD00087984-87985 | 9/20/2021 Milton Contact with Colby (Notes) Email, Litigation Strategy | Official Information; Deliberative Process | DENY |
| CSD00088198-88202 | Charles Merritt Discovery in Dorotik email | Official Information; Deliberative Process | DENY |
| CSD00089283-89289 | Dorotik DNA Exclusion List | Official Information; Deliberative Process | GRANT IN PART, DENY IN PART[13] |
| CSD00089509 | Merritt BPA Cases Notes, Attorney Impressions and Litigation Strategy | Official Information; Deliberative Process | GRANT |
| CSD00089515-89519 | Lab Disclosure Materials Notes, Attorney Impressions, and Litigation Strategy | Official Information; Deliberative Process | DENY |
| CSD00089525-89717 | PowerPoint for County Counsel | Official Information; Deliberative Process | DENY |
| CSD00089718 | Notes, Attorney Impressions and Litigation Strategy on records Shared with Empson | Official Information; Deliberative Process | DENY |

### 3. <u>Attorney-Client Privilege</u>

The County asserts the attorney-client privilege over every disputed document in Defendants' Privilege Log 2 (Dkt. No. 75-5).

### i. **Legal principles**

The attorney-client privilege protects "communications between client and attorney for the purpose of obtaining legal advice, provided such communications were intended to be confidential." *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001). "Because the attorney-client privilege has the effect of withholding relevant information from the fact-finder, it is applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney." *Clarke v. Am. Com. Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). "Because it impedes full and free discovery of the truth,

---

[13]  The County shall produce these pages, but may redact the notes on pages 89288-89289. The balancing analysis weighs against disclosing these notes because doing so would chill deliberative speech.

the attorney-client privilege is strictly construed." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). "The burden is on the party asserting the privilege to establish all the elements of the privilege." *Id*. at 999-1000. The elements are:

> (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.

*Id.* at 999.

### ii.    Discussion

The parties agree email communications seeking legal advice between County or Crime Lab employees and County or Sheriff's Office counsel are protected by the attorney-client privilege. May 27 Trans. at 118:16-119:5 (Plaintiff's counsel: "if there are individual communications with only those employees and only their counsel, . . . yes, those are privileged."). The parties also agree the inclusion of deputy district attorneys on those email communications destroys the privilege. *Id.* at 119:11-22 (Defense counsel: "I agree that . . . [i]f the D.A. is copied on it, that . . . it's no longer attorney-client."). Most documents in Defendants' Privilege Log 2 are email threads containing some privileged emails and some unprotected emails. Those threads must be produced to Plaintiff with the redactions set forth in the chart below.

Some of the documents are entirely not privileged, whether because they do not seek legal advice (PL00000039, 00000081, 00000084, 00000086) or because they include DAs (PL00000085). Those documents must be produced to Plaintiff in their entireties.

And finally, some of the documents are wholly privileged and shall not be produced to Plaintiff in any form. These are documents such as PL00000091, which is an email thread exclusively between County and Crime Lab employees and Sheriff's Legal counsel that discusses how to respond to an improperly served subpoena and what objections to raise. Communications like these satisfy each element of the attorney-client privilege.

Other documents that the County need not produce to Plaintiff are PL00000072, 00000089, and 00000091.

/ / /

/ / /

/ / /

### 4. **Work Product Doctrine**

The County asserts the work product doctrine over three documents in Defendants' Privilege Log 2.

### i. **Legal principles**

"The work-product doctrine is a qualified privilege that protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case, and protects both material prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* The doctrine "upholds the fairness of the adversarial process by allowing litigators to creatively develop legal theories and strategies – without their adversaries invoking the discovery process to pry into the litigators' minds and free-ride off them." *In re Grand Jury*, 23 F.4th 1088, 1093 (9th Cir. 2021); *see also* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . .").

"To establish work product protection, a party must establish that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party." *Perrin v. Cnty. of Riverside*, No. EDCV08595LLPSSX, 2010 WL 11556698, at *3 (C.D. Cal. Mar. 12, 2010). "The initial burden rests on the party asserting work product protection to show how the material withheld fits within that doctrine." *Id.*

### ii.    Discussion

The County asserts the work product doctrine[14] over Bates Nos. PL00000008, PL00000091, and PL00000290.  The Court need not discuss the first two because they fall squarely under the attorney-client privilege.  The Court overrules the County's objection as to PL00000290 because *in camera* review reveals this document was not prepared in anticipation of litigation or for trial; rather, it is an email thread between employees of the San Diego County Sheriff's Department and Connie Milton regarding her placement on the Brady Index and request for records related to that placement.  Thus, the County has not met its burden to show how this document is protected work product.

With the foregoing legal standards and analysis in mind, the Court rules on the motion to compel production for each of the disputed documents as follows:

_____

[14]  Plaintiff contends the County may not assert the work product doctrine because the County was not a party to the underlying criminal case.  Dkt. No. 75 at 18.  The Court agrees with the general proposition that County defendants may not rely on work product protection to shield documents created during the underlying criminal investigation and prosecution in this civil rights case where the County was not a party to the underlying criminal case.  *See Perrin*, 2010 WL 11556698, at *3 ("because the County . . . was not a party to the criminal action, it could not assert the work product doctrine to bar production of prosecutorial files"); *Doubleday v. Ruh*, 149 F.R.D. 601, 606 ("In sum, the County cannot assert the work product immunity because the work product was never prepared for it; the deputy district attorneys cannot assert the immunity because they are not parties to the present litigation, nor are they 'representative of' a party in this litigation for whom the work product was prepared."); *Ixta v. Cnty. of Ventura*, No. 222CV02468MCSAFMX, 2023 WL 2631842, at *2 (C.D. Cal. Feb. 22, 2023) ("A critical failure of Defendants' invocation of the work product doctrine is that neither the County nor the District Attorney's Office were parties in the underlying criminal proceedings."); *Sommer v. United States*, No. 09CV2093-WQH BGS, 2011 WL 4433631, at *6 (S.D. Cal. Sept. 22, 2011) (Although documents in the DA's file "used to prosecute Plaintiff constituted work product in the criminal case, they may no longer benefit from that protection" because the County "was not a party to the criminal case, therefore the work product was not prepared on its behalf.").  But the Court need not reach this issue because the three documents at issue were not created during the underlying criminal trial(s).

**Defendants' Privilege Log No. 2 (Dkt. No. 75-5)**

| Bates No. | Objection | Motion to Compel |
|---|---|---|
| PL00000007 | AC Privilege | GRANT IN PART, DENY IN PART. The email(s) with DDA Karl Husoe shall be produced. The rest may be redacted. |
| PL00000008 | AC Privilege; Work Product | GRANT IN PART, DENY IN PART. The email(s) with DDA Karl Husoe shall be produced. The rest may be redacted. |
| PL00000039 | AC Privilege | GRANT |
| PL00000055 | AC Privilege | GRANT IN PART, DENY IN PART. The email(s) with DDA Kurt Mechals shall be produced. The rest may be redacted. |
| PL00000058 | AC Privilege | GRANT IN PART, DENY IN PART. The email(s) with DDA Kurt Mechals shall be produced. The rest may be redacted. |
| PL00000060 | AC Privilege | GRANT IN PART, DENY IN PART. The email(s) with DDA Kurt Mechals shall be produced. The rest may be redacted. |
| PL00000061 | AC Privilege | GRANT IN PART, DENY IN PART. The email(s) with DDA Kurt Mechals shall be produced. The rest may be redacted. |
| PL00000062 | AC Privilege; Third-Party Privacy | GRANT IN PART, DENY IN PART. The email(s) with DDA Kurt Mechals shall be produced. The rest may be redacted. |
| PL00000066 | AC Privilege | GRANT IN PART, DENY IN PART. The email(s) with DDA Kurt Mechals shall be produced. The rest may be redacted. |
| PL00000072 | Deliberative Process; AC Privilege | DENY |
| PL00000075 | AC Privilege | GRANT IN PART, DENY IN PART. The first email may be redacted. The rest shall be produced. |
| PL00000076 | AC Privilege | GRANT IN PART, DENY IN PART. The first three emails may be redacted. The rest shall be produced. |
| PL00000077 | AC Privilege | GRANT IN PART, DENY IN PART. The first email may be redacted. The rest shall be produced. |
| PL00000078 | AC Privilege | GRANT IN PART, DENY IN PART. The first two emails may be redacted. The rest shall be produced. |
| PL00000079 | AC Privilege | GRANT IN PART, DENY IN PART. The first three emails may be redacted. The rest shall be produced. |
| PL00000080 | AC Privilege | GRANT IN PART, DENY IN PART. The first email may be redacted. The rest shall be produced. |

23-cv-1045-CAB-DDL

| PL00000081 | AC Privilege | GRANT |
|---|---|---|
| PL00000084-85 | AC Privilege | GRANT |
| PL00000086 | AC Privilege | GRANT |
| PL00000091 | AC Privilege; Work Product | DENY |
| PL00000098 | AC Privilege | GRANT IN PART, DENY IN PART. The first three emails may be redacted. The rest shall be produced. |
| PL00000099[15] | AC Privilege | |
| PL00000290 | AC Privilege; Work Product | GRANT IN PART, DENY IN PART. The first three emails may be redacted. The rest shall be produced. |
| PL00000291 | AC Privilege | GRANT IN PART, DENY IN PART. The first email may be redacted. The rest shall be produced. |
| PL00000292 | AC Privilege | GRANT IN PART, DENY IN PART. The first three emails may be redacted. The rest shall be produced. |
| PL00000293 | AC Privilege | GRANT IN PART, DENY IN PART. The first email may be redacted. The rest shall be produced. |
| PL00000299 | AC Privilege | GRANT IN PART, DENY IN PART. The first three emails may be redacted. The rest shall be produced. |
| PL00000330 | AC Privilege | GRANT IN PART, DENY IN PART. The first email may be redacted. The rest shall be produced. |
| PL00000359 | AC Privilege | GRANT IN PART, DENY IN PART. The first email may be redacted. The rest shall be produced. |
| PL00000380 | AC Privilege | GRANT IN PART, DENY IN PART. The first email may be redacted. The rest shall be produced. |
| PL00000404 | AC Privilege | GRANT IN PART, DENY IN PART. The first email may be redacted. The rest shall be produced. |
| PL00000409 | AC Privilege | GRANT IN PART, DENY IN PART. The first email may be redacted. The rest shall be produced. |
| PL00000415 | AC Privilege | GRANT IN PART, DENY IN PART. The first email may be redacted. The rest shall be produced. |
| PL00000416 | AC Privilege | GRANT IN PART, DENY IN PART. The first email may be redacted. The rest shall be produced. |
| PL00000422 | AC Privilege | GRANT IN PART, DENY IN PART. The first two emails may be redacted. The rest shall be produced. |
| PL00000423 | AC Privilege | GRANT IN PART, DENY IN PART. The first email may be redacted. The rest shall be produced. |

[15] There is no document Bates numbered PL00000099 in the Court's possession.

| PL00000436 | AC Privilege | GRANT IN PART, DENY IN PART. The email(s) with DA Karl Husoe shall be produced. The rest may be redacted. |
| PL00000489 | AC Privilege | DENY |
| PL00000491 | AC Privilege | DENY |

**B.**   **Defendants' Motion to Compel re Steigerwalt Subpoena (Dkt. No. 100)**

   **1.**   **Background**

Steigerwalt was trial counsel for Dorotik in her state court murder case from February 2000 through August 2001. Dkt. No. 104-2 at 2. In September 2024, the County served a subpoena on Steigerwalt seeking, in relevant part, "any and all documents relating to the Jane Dorotik criminal trial," including "any and all documents relating to communications you have had with your client Jane Dorotik." Dkt. No. 66-6 at 4.[16]

Steigerwalt initially provided the County's copy service with documents but instructed that the documents should only be reviewed by the Court. On February 26, 2025, the Court held a discovery hearing and directed Steigerwalt to produce to the parties responsive documents as to which there was no claim of attorney-client privilege or work product protection and provide a privilege log for withheld documents. Dkt. No. 70.

On April 17, 2025, the Court held a further discovery conference and reviewed the privilege log provided by Steigerwalt. The Court ordered Steigerwalt to produce the

---

[16]   More specifically, the subpoena requires production of "any and all documents relating to the Jane Dorotik criminal trial (R. Dorotik murder), including but not limited to any and all physical evidence, communications, records, photographs, interviews, videos, audio recordings, any findings relating to the defense of Jane Dorotik . . . any and all documents relating to communications you have had with your client Jane Dorotik; any and all documents relating to communications you have had with any attorney representing Jane Dorotik during the years of 2015-2024;" and "any and all documents relating to communications you have had with Claire Dorotik, Alex Dorotik, and any witnesses that testified in the original criminal file [sic]." *Id.*

documents as to which there was no objection and provide an amended privilege log stating the basis for withholding the documents contained on the log.  Dkt. No. 86.

Following a further hearing on May 12, 2025, the Court ordered Steigerwalt to produce certain documents and provide the documents listed on the amended privilege log to the Court for *in camera* review.  Dkt. No. 97.   Steigerwalt complied.

The County moved to compel production of the documents listed on Steigerwalt's amended privilege log.  Dkt. No. 100.  Dorotik opposed the motion.  Dkt. No. 104.

The Court held a motion hearing on May 27, 2025.   Steigerwalt appeared and explained that documents pertaining to his trial preparation were lost when his car was stolen prior to the 2001 trial and that all his stored files pertaining to his representation of Dorotik were destroyed when his office flooded in 2009.  May 27 Trans. at 53, 67-69.  As a result, Steigerwalt does not currently possess any of the documents generated in connection with his representation of Dorotik at her criminal trial, and the documents identified on his privilege log were all generated in 2020 in connection with Dorotik's habeas proceedings in which she was represented by LAIP.  Dkt. No. 100-1; May 27 Trans. at 53.

### 2.  **Implied Waiver**

#### i.  **Introduction**

The implied waiver doctrine involves a multi-factor analysis to determine whether fairness requires the disclosure of privileged communications.  *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999).   Applying this analysis, the Ninth Circuit has recognized a "narrow waiver rule" in the context of a habeas petition alleging ineffective assistance of counsel ("IAC") claims.  *See Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003).   Similarly, courts have found implied waivers where a plaintiff files a lawsuit alleging claims that put at issue privileged information vital to the defendant's case.  *See, e.g.*, *Tennison v. City & Cnty. of San Francisco*, 226 F.R.D. 615 (N.D. Cal. 2005).

The County does not squarely rely on either of these lines of authority.  Rather, the County argues that Dorotik impliedly waived the attorney-client privilege as to her

communications with Steigerwalt by filing habeas petitions in federal and state court alleging that Steigerwalt provided ineffective assistance and "has now seemingly levied many of those same unmeritorious allegations originally aimed at Steigerwalt at the County defendants . . . ." Dkt. No. 100 at 4. However, as explained below, the County's argument that similarity of claims raised in a habeas petition and a subsequent lawsuit triggers an implied waiver is unsupported by caselaw and by the fairness concerns underlying the implied waiver doctrine.

### ii.    Legal principles

The implied waiver doctrine, also known as the "fairness principle," "is often expressed in terms of preventing a party from using the privilege as both a shield and a sword." *Bittaker*, 331 F.3d at 719. "[T]his means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Id.*

The implied waiver analysis requires the Court to consider (1) "whether the party is asserting the privilege as the result of some affirmative act, such as filing suit," (2) "whether through this affirmative act, the asserting party puts the privileged information at issue" and (3) "whether allowing the privilege would deny the opposing party access to information vital to its defense." *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999). Where these considerations support finding an implied waiver, "the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it" and "closely tailor[] the scope of the waiver to the needs of the opposing party in litigating the claim in question." *Bittaker*, 331 F.3d at 720.

As the Ninth Circuit explained in *Bittaker*:

The court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials if it wishes to go forward with its claims implicating them. The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it . . . Essentially, the court is striking a bargain with the holder of the privilege

by letting him know how much of the privilege he must waive in order to proceed with his claim.

*Id.* at 719.

*Bittaker* considered the scope of an implied waiver where a habeas petitioner alleges ineffective assistance of counsel.  The Ninth Circuit recognized the competing considerations that "claims of ineffective assistance of counsel cannot be fairly litigated unless the petitioner waives his privilege for purposes of resolving the dispute" but that "[a] broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defense that the attorney-client and work product privileges are designed to promote."  *Id.* at 722.  Weighing these considerations, *Bittaker* adopted a "narrow waiver rule" whereby a habeas petitioner asserting an ineffective assistance of counsel claim waives the privilege only as to "what is needed to litigate the claim of ineffective assistance of counsel in federal court."  *Id.*

### iii.    Discussion

*Bittaker* does not support a finding that Dorotik impliedly waived the attorney-client privilege with respect to the entirety of her communications with Steigerwalt by filing habeas petitions in state and federal court.  As an initial matter, *Bittaker* made clear that in applying the "narrow waiver rule" for ineffective assistance of counsel claims, the disclosure of privileged materials is limited to the habeas proceedings that trigger the waiver.  "[D]istrict courts have the obligation, whenever they permit discovery of attorney-client materials as relevant to the defense of ineffective assistance of counsel claims in habeas cases, to ensure that the party given such access does not disclose these materials, except to the extent necessary in the habeas proceeding, *i.e.*, to ensure that such a party's actions do not result in a rupture of the privilege."  *Id.* at 727-28.  Given that an order to disclose privileged materials in habeas proceedings does not rupture the privilege for any retrial if the habeas petition is granted, it would follow that such disclosure also would not, standing alone, rupture the privilege for purposes of future civil litigation.  *See id.* at 722 ("If the federal courts were to require habeas petitioners to give up the privilege

categorically and for all purposes, attorneys representing criminal defendants in state court would have to worry constantly about whether their casefiles and client conversations would someday fall into the hands of the prosecution.").

Assuming without deciding that *Bittaker*'s rationale applies in this post-habeas civil rights case, Dorotik would have waived the privilege only as to those communications with Steigerwalt "needed to litigate the claim of ineffective assistance of counsel in federal [or state] court."  *Id.*  Initially, the record was silent as to the specific IAC allegations raised in Dorotik's state and federal habeas proceedings.  *See* Dkt. No. 100.  Thereafter, the County submitted a chart comparing Dorotik's IAC allegations in her federal and state habeas proceedings with her allegations in this case.  *See* Dkt. No. 118-1.  For example, the County contends Dorotik's habeas IAC claim that Steigerwalt failed to challenge the prosecution's forensic evidence mirrors her allegations in this case that the Crime Lab withheld evidence that its personnel investigating her case were incompetent.  *Id.* at 2-3.  Dorotik disputes that her § 1983 claims against the County and its personnel in this case implicate her IAC allegations regarding Steigerwalt in the habeas proceedings; however, that dispute need not be resolved here.

Even if Dorotik's allegations against the County in this case are related to (or even the same as) her habeas IAC allegations against Steigerwalt, that has no bearing on what was needed to litigate the habeas IAC claims, which is the relevant consideration under *Bittaker*.  The record before the Court indicates that no discovery of privileged communications was ordered in either the state or federal habeas proceedings.  In the state habeas proceedings, the People conceded Dorotik's new evidence claim "without holding an evidentiary hearing or addressing any other claims . . . ."  Dkt. No. 104-3 at 4.  And in the federal habeas proceedings, the District Court's order denying Dorotik's petition did not rely on any privileged communications.  *See* Dkt. No. 118-2 at 5-15.  The County does not otherwise articulate what, if any, privileged information was needed to litigate the petitions in state or federal court so as to create an implied waiver under *Bittaker*.

/ / /

The County asserts that *Bittaker* "failed to consider" the situation presented here where Dorotik's habeas proceedings have concluded and she "has now seemingly levied many of those same unmeritorious allegations originally aimed at Steigerwalt at the County Defendants . . . ." Dkt. No. 100 at 4. It is true, of course, that *Bittaker* considered only the issue before it, *i.e.,* the scope of waiver caused by a habeas petitioner alleging IAC. In analyzing this issue, *Bittaker* applied general principles of the implied waiver doctrine to the case at hand. 331 F.3d at 719-724. The County's motion does not explain how Dorotik is "asserting the privilege as the result of some affirmative act," how she has thereby "put[] the privileged information at issue" or how "allowing the privilege would deny the [County] access to information vital to its defense." *Amlani*, 169 F.3d 1189 at 1195.

Had the County argued that Dorotik's allegations in this lawsuit – irrespective of any prior habeas petitions – put her privileged communications with Steigerwalt at issue and that such privileged information was vital to its defense, the Court would have applied the relevant factors and, if they supported a waiver, determined how to "closely tailor[] the scope of the waiver to the needs of the [County] in litigating the claim in question." *Bittaker*, 331 F.3d at 720. *See, e.g.*, *Tennison*, 226 F.R.D. at 622-23 (plaintiff's civil action alleging defendants "violated his constitutional rights by suppressing exculpatory evidence and relying on perjured testimony" to obtain criminal conviction impliedly waived privilege and work product as to documents showing what plaintiff and his attorney "knew or should have known about the evidence allegedly suppressed or falsity of perjured testimony"); *Caldwell v. City of San Francisco*, No. 12-CV-01892-EDL, 2015 WL 1265048, at *3-5 (N.D. Cal. Mar. 19, 2015) (where civil rights plaintiff was convicted of murder and subsequently released following the grant of his state habeas petition, court concluded the plaintiff's allegations in the civil lawsuit impliedly waived the attorney-client privilege with his criminal defense counsel as to two specific topics on which the defendants sought the attorney's testimony). However, throughout multiple rounds of briefing and argument, the County has consistently maintained that its waiver argument is based on the asserted similarity between Dorotik's allegations in the habeas proceedings

and in this case.  Dkt. Nos. 95 at 2-3; 100 at 4, 118.  The County cites no authority supporting its theory of implied waiver, and the Court concludes that mere similarity of allegations does not, standing alone, put Dorotik's privileged communications at issue or demonstrate how any such communications are vital to the County's defense of this case.  Accordingly, the Court declines to find an implied waiver based on the current record.

### 3.   **Express Waiver**

"An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."  *Bittaker*, 331 F.3d at 719.  The County contends Dorotik expressly waived her attorney-client privilege with Steigerwalt by retaining LAIP to pursue her habeas petition and thereafter asserting that Steigerwalt provided IAC.  Dkt. No. 100 at 6.  However, the County does not explain how Dorotik's retention of LAIP for her habeas proceedings thereby disclosed her privileged communications with Steigerwalt "to a third party who is not bound by the privilege" or "show[ed] disregard for the privilege by making the information public."  *Bittaker*, 331 F.3d at 719.  Moreover, in the same argument, the County invokes the fairness principle, which is distinct from an express waiver.  *See Bittaker*, 331 F.3d at 719-20 (contrasting an implied waiver imposed by a court based on the fairness principle with an express waiver in which "courts have no role in encouraging or forcing the disclosure – they merely recognize the waiver after it has occurred").

Adopting the County's theory of express waiver – that Dorotik waived the privilege as to her communications with Steigerwalt by retaining LAIP to pursue her ineffective assistance of counsel claim – would functionally rupture the privilege whenever a habeas petitioner alleges an IAC claim, a result directly at odds with *Bittaker*.  There was no express waiver on the facts presented here.

### 4.   **Work Product Doctrine**

Steigerwalt's privilege log asserts the work product doctrine as the basis to withhold multiple documents that he created in 2020.  *See* Dkt. No. 100-1 at 2-3.  Based on the Court's *in camera* review, all these documents relate to Dorotik's state habeas proceedings

and her allegation that Steigerwalt provided IAC.  The documents include communications between Steigerwalt and LAIP, communications between Steigerwalt and others in his law office, and multiple unfiled, draft declarations in which Steigerwalt responds to Dorotik's assertion that he provided ineffective assistance as her criminal trial counsel.

As noted above, the work product doctrine "protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Sanmina Corp.*, 968 F.3d at 1119.  *See* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . .").  "To establish work product protection, a party must establish that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."  *Perrin*, 2010 WL 11556698, at *3.

The first two elements are met because the materials as to which Steigerwalt asserts work product protection are documents that were prepared in connection with the litigation of Dorotik's state habeas proceedings.  It does not matter that the materials were prepared in connection with the prior habeas proceedings, because "the literal language of the Rule protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation" *F.T.C. v. Grolier*, 462 U.S. 19, 25 (1983); s*ee also F.T.C. v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) ("A document prepared as work product for one lawsuit will retain its protected status even in subsequent, unrelated litigation."); *Tennison*, 226 F.R.D. at 620 (work product of criminal defendant's attorney carried over into subsequent civil rights suit by criminal defendant).

The question then is whether Steigerwalt's documents from the habeas proceedings were "prepared by or for a party to the subsequent litigation."  *Grolier*, 462 U.S. at 25. Steigerwalt is not a party to this case, nor did he represent Dorotik in 2020 when he prepared the documents at issue.  Dorotik asserts the documents "were prepared for her" (Dkt. No. 112 at 4), but she does not explain how this is so.  Steigerwalt's representation

31

of Dorotik ended years before Dorotik filed her state habeas petition asserting that he provided IAC.  And based on the Court's *in camera* review of Steigerwalt's documents, it is clear that his draft declaration and other documents were not prepared "on behalf of" Dorotik but rather were prepared by Steigerwalt to respond to the IAC claims levied against him in Dorotik's state habeas petition.  On these facts, the Court cannot conclude that Steigerwalt's documents from 2020 were "prepared by or for" Dorotik.  *Grolier*, 462 U.S. at 25.

Steigerwalt's documents include multiple versions of his unfiled declaration containing detailed information about his analysis of the evidence in the murder case and his trial preparation strategy, including his opinions and mental impressions.  Had these materials been prepared for Dorotik, this opinion work product would receive "almost absolute immunity" from disclosure.  *In re Insogna*, No. 3:19-CV-1589-LAB-AHG, 2020 WL 85487, at *8 (S.D. Cal. Jan. 3, 2020).  But a finding that the declarations were not created by or for Dorotik means they are not protected work product in the first place.

The Court reaches this conclusion with reluctance.  The opinions and mental impressions described in the declaration were formed in 2000 and 2001 when Steigerwalt was representing Dorotik in her criminal proceedings and working on her behalf, and there is a sense of unfairness that the work product protection disappears entirely because Steigerwalt memorialized those opinions and mental impressions following the conclusion of his representation of Dorotik.  Given the "substantial policy reasons" to safeguard criminal defense attorney files, *Tennison*, 226 F.R.D. at 620, an argument could be made that Steigerwalt's opinions should not lose their work product status under these circumstances.  However, Rule 26(b)(3)(A) "on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought," and "the language of the rule makes clear that only parties and their representatives may invoke its protection."  *In re Cal. Pub. Utilities Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989) (documents prepared by CPUC staff attorneys not entitled to work product protection in litigation between other parties notwithstanding that documents were "authored or gathered

by CPUC staff attorneys for actual or potential use in past, pending or contemplated CPUC proceedings"). Requiring Steigerwalt to produce documents that contain detailed information about his mental impressions, opinions, and trial strategy regarding his representation of Dorotik may raise broader policy concerns regarding the protection of attorney case files, but the production of such information in this case where the materials were not prepared on behalf of Dorotik is compelled by Rule 26(b)(3)(A), and courts "are not free to suspend" the Rule's requirements. *Id*. Accordingly, the Court finds the work product doctrine does not apply to the materials contained on Steigerwalt's privilege log.

This does not mean that all the materials identified in Steigerwalt's privilege log must be produced in their entirety. Based on the Court's *in camera* review and information provided by Steigerwalt at the May 27 hearing, even though none of Steigerwalt's documents are subject to the work product doctrine, certain of the documents contain information protected from disclosure by the attorney-client privilege. This includes confidential communications between Steigerwalt and Dorotik pertaining to her criminal case as to which Dorotik, as the client, has asserted the privilege, as well as confidential communications between Steigerwalt and his counsel in the state habeas proceedings as to which Steigerwalt, as the client, has asserted the privilege. The Court has found that Dorotik did not impliedly or expressly waive the attorney-client privilege with respect to her confidential communications with Steigerwalt. Nor has Steigerwalt waived the privilege with respect to his confidential communications with counsel he consulted for legal advice in connection with the state habeas proceedings. Steigerwalt's production of documents will not include information regarding privileged attorney-client communications between Dorotik and Steigerwalt or between Steigerwalt and his counsel.

For all the foregoing reasons, the Court concludes the work product doctrine does not apply to the materials on Steigerwalt's privilege log but that the attorney-client privilege applies to some of the materials. Accordingly, the Court orders as follows:

1. The County's motion to compel is DENIED with respect to the following documents that reflect confidential communications between Steigerwalt and his counsel:

000003-000007, 000008-000009, 000072-000073, 000077-000079, 000153-000220, 000221-000267, 000354-000383, 000954-000955, 000958, 000959-000960, 007341-007342, and 007646. Steigerwalt shall not produce any of these documents.

2. The County's motion to compel is DENIED with respect to the following documents that the parties agree are non-responsive to the subpoena and were inadvertently included in the privilege log: 007641-007645 and 007816-007817. Steigerwalt shall not produce any of these documents.

3. The County's motion to compel is GRANTED with respect to the remaining documents on the privilege log. This includes Steigerwalt's draft declarations reflected on the log and the "final draft" declaration not listed on the log that Steigerwalt provided (without Bates numbers) to Dorotik's counsel and that was, in turn, provided to the Court with highlights reflecting Dorotik's assertions of work product and attorney-client privilege. The parties shall employ the following procedure to identify and redact privileged communications in the documents:

a. By not later than July 14, 2025, Steigerwalt shall provide to Dorotik's counsel all documents identified on the privilege log other than the documents specified in paragraphs 1 and 2 above.

b. Dorotik's counsel shall review the documents for privileged communications between Dorotik and Steigerwalt and shall add sequential Bates numbers to the "final draft" declaration previously provided by Steigerwalt. Having reviewed the "final draft" with Dorotik's highlighted privilege assertions, the Court finds those redactions to be appropriate, and Dorotik's counsel shall similarly redact only privileged communications from the remaining documents.

c. By not later than July 28, 2025, Dorotik's counsel shall produce all such documents to the County with redactions to any portions of the documents reflecting privileged communications between Dorotik and Steigerwalt but without redactions for work product.

/ / /

**C.    Defendants' Motion to Compel RE LAIP Subpoenas (Dkt. No. 80)**

    **1.    Background**

Paula Mitchell is the current director of LAIP and the former legal director of the Loyola Law School Project for the Innocent ("LPI"). Dkt. No. 109-1 at 2, 8. Mitchell and other members of LPI and LAIP represented Dorotik in her state court post-conviction proceedings between 2019 and 2022 and at her preliminary hearing held after the conviction and sentence were vacated. Dkt. Nos. 109-1 at 8, 94 at 3. *Id.* In total, LPI's and LAIP's representation of Dorotik spanned approximately six years. Dkt. No. 66-4 at 2.

In September 2024, the County served two subpoenas on LAIP seeking production of "any and all documents in your possession relating to Jane Dorotik" and "any and all documents in your possession relating to Robert Dorotik." Dkt. No. 66-4 at 6-7. According to a declaration submitted by LAIP staff attorney Eliza Haney, "LAIP's case file is voluminous. It encompasses six years of representation and is comprised primarily of attorney work product and confidential communications between members of Ms. Dorotik's legal team." Dkt. No. 66-4 at 2. "Due to its limited resources, LAIP temporarily suspended certain operations from October through December 2024 in order to make staff available to respond to the subpoenas," and "LAIP staff members, including its three staff attorneys, have devoted hundreds of hours to reviewing the case file for responsive documents and logging privileged materials . . . ." *Id.* at 2-3.

Ultimately, LAIP produced over 12,000 pages of responsive, non-privileged documents. Dkt. No. 109-1 at 2. The Court held multiple discovery conferences and directed LAIP to provide an updated privilege log. LAIP's updated privilege contained 577 entries for documents as to which it asserts the attorney-client privilege or work product protection. Dkt. No. 80-2.

The County moved to compel further responses to its subpoenas, arguing that LAIP's privilege log was insufficient, that Dorotik waived the attorney-client privilege,

and the work product doctrine did not shield LAIP records that contain facts otherwise unavailable to the County.  Dkt. No. 80.  Dorotik opposed the motion.  Dkt. No. 83.

### 2.    LAIP's privilege log is sufficient

After reviewing County's motion and Dorotik's opposition, the Court found that "the subpoenas directed to [LAIP] are expansive, and their scope plainly includes documents created by counsel and communications between counsel and [Dorotik]."  Dkt. No. 89 at 4.  Accordingly, the Court ordered the County to select 20 entries on LAIP's privilege log for the Court to review *in camera* and ordered LAIP to file a further declaration with information about each of the selected documents to allow an assessment of LAIP's privilege and work product assertions.  *Id.* at 4-5.

Having reviewed *in camera* each of the 20 documents selected by the County, the Court confirms its tentative conclusion stated at the May 27 hearing that LAIP properly asserted the attorney-client privilege and work product doctrine with respect to 19 of those documents.  May 27 Trans. at 55.  Given this finding, and for the reasons stated in the Court's April 30 Order (Dkt. No. 89) and on the record at the May 27 hearing, the Court denies the County's motion to compel LAIP to provide a more detailed privilege log.

### 3.    Dorotik has not impliedly waived the attorney-client privilege

The County contends LAIP must produce all documents in its possession reflecting communications between Dorotik and Steigerwalt.  Dkt. No. 80-1 at 9.  Specifically, the County asserts that "Plaintiff has impliedly waived the attorney-client privilege on all her communications with Kerry Steigerwald [sic] because she now claims it was Defendant's misconduct, as opposed to her attorney's ineffective assistance that led to her imprisonment."  *Id.*  Dorotik contends that her IAC claims against Steigerwalt have no bearing on her claims in this case.  Dkt. No. 119 at 3.

The Court need not resolve whether Dorotik's claims in this case mirror her IAC claims against Steigerwalt.  As discussed above with respect to the County's motion to compel regarding the Steigerwalt subpoena, Dorotik has not impliedly waived the attorney-client privilege with respect to her communications with Steigerwalt.  And the County does

not argue that Dorotik has waived the attorney-client privilege with respect to her communications with LAIP. That analysis applies equally to the County's motion to compel as to LAIP. There was no implied waiver on the theory advanced by the County.

### 4. Work product doctrine

LAIP invokes the work product doctrine to withhold multiple documents pertaining to its representation of Dorotik. The materials at issue are documents that "were prepared in anticipation of litigation or trial" and were prepared "by or for a party or a representative of that party." *Perrin*, 2010 WL 11556698, at *3. That the materials were prepared for litigation of the habeas proceedings does not deprive them of protection in this case because "the literal language of [Rule 26(b)(3)(A)] protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *Grolier*, 462 U.S. at 25; *Boehringer Ingelheim Pharms., Inc.*, 778 F.3d at 149. And unlike Steigerwalt's documents, the LAIP materials were prepared on behalf of Dorotik during LAIP's representation of her in the habeas proceedings.

The County argues that "purely factual" materials may not constitute work product. The Court disagrees. The work product doctrine "shields both opinion and factual work product from discovery." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). Thus, "[f]act work product is protected if the documents were prepared in anticipation of litigation." *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 510 (S.D. Cal. 2003). Here, LAIP's materials were prepared in anticipation of litigation and are entitled to work product protection.

"Even when documents are prepared by a party or party representative in anticipation of litigation they may be discoverable upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Kintera, Inc.*, 219 F.R.D. at 510. On the other hand, opinion work product receives "almost absolute immunity" from disclosure. *In re Insogna*, 2020 WL 85487, at *8. To obtain opinion work product, the requesting party must show that

counsel's mental impressions are "at issue" and "the need for the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).

Here, the County seeks only fact work product and not opinion work product. Dkt. No. 80-1 at 11. Specifically, the County seeks documents reflecting witness interviews, correspondence with Steigerwalt "detailing facts known at the time of the case," "background information and reports on witnesses" and "forensics reports and other facts concerning the evidence or investigation." *Id.* According to the County, it has a substantial need for these documents pertaining to Dorotik's 2001 criminal trial because "the D.A. has lost its case file from the original 2001 trial." Dkt. No. 80-2 at 2.

The substantial need inquiry involves "1) whether the information is an essential element in the requesting party's case and 2) whether the party requesting discovery can obtain the facts from an alternate source." *Fletcher v. Union Pac. R.R. Co.*, 194 F.R.D. 666, 671 (S.D. Cal. 2000) (noting that common examples might be "test results that cannot be duplicated," "photographs taken immediately after an accident where the accident scene has since changed," or "contemporaneous statements taken from, or made by, parties or witnesses"). The requesting party bears the burden of establishing both factors. *Id.*

At the May 27 hearing, the parties represented that the County has produced the Sheriff's Department "homicide binder" to Dorotik and that LAIP has produced to the parties all discovery materials from the underlying criminal case in its possession. May 27 Trans. at 11-12, 21-22. After the May 27 hearing, the Court directed LAIP to determine whether it possesses any documents reflecting witness interviews conducted in 2000-2001, and LAIP has represented that it has produced all such witness interview reports. Dkt. Nos. 106, 109 at 3-5. Given that all witness interviews from 2000-2001 have been produced, the Court need not assess whether the County has established a substantial need for those documents.

LAIP asserts that its communications with Steigerwalt are subject to the work product doctrine. *Id.* at 6-8. The Court disagrees. Even if LAIP's communications with Steigerwalt satisfy the criteria for work product, sending those communications to

Steigerwalt and his counsel, who were in an adversarial position to Dorotik given her habeas allegations and the nature of the communications would be "inconsistent with the maintenance of secrecy from the disclosing party's adversary." *Sanmina Corp.*, 968 F.3d at 1121. Accordingly, the communications between LAIP and Steigerwalt identified on LAIP's privilege log shall be produced. *See* Dkt. No. 109 at 7-8 (Priv. Log Item #s 3-6, 97, 230, 242, 244, 333, 580).

**III.**

**CONCLUSION**

For all the foregoing reasons, the Court ORDERS as follows:

1.     Plaintiff's motion to compel (Dkt. No. 75) is GRANTED IN PART. The County shall produce the responsive documents required by this Order by not later than July 28, 2025.

2.     The County's motion to compel further response to the LAIP subpoena (Dkt. No. 80) is GRANTED IN PART. LAIP shall produce the responsive documents required by this Order by not later than July 28, 2025.

3.     The County's motion to compel further response to the Steigerwalt subpoena (Dkt. No. 100) is GRANTED IN PART. The parties shall follow the deadlines set forth above for review and production of documents.

4.     The Court sets a Status Conference for **August 27, 2025** at **10:00 a.m.** by Zoom. Meeting credentials will be posted to the docket.

**IT IS SO ORDERED.**

Dated: July 7, 2025

_____
Hon. David D. Leshner
United States Magistrate Judge

23-cv-1045-CAB-DDL